MERRICK OGDEN *vs.* RUFUS JENNINGS and others.

Where a deed conveyed to trustees of a school district " all that piece of land on lot 597, and on the ground now occupied by the present school district, for the sole and express purpose of a school-house, with the appurtenances," &c., in fee, with a covenant for quiet enjoyment of the same, " with the *appurtenances.*" *Held* per P. POTTER, J., that it conveyed as appurtenant, whatever was necessary for the enjoyment of the premises, by way of easement, if not in fee; and that the question whether a strip of ground which had been used as a play-ground was necessary for such enjoyment should have been submitted to the jury.

*Held,* per PARKER, J., that the deed conveyed only the land on which the school-house then stood, together with the right, as an easement, to continue the other buildings as they then stood, and a right of way to them, and not the use of vacant grounds adjacent, as a play-ground.

What is necessary to constitute an adverse possession.

EXCEPTIONS ordered to be heard in the first instance at the General Term after verdict for the defendants.

The action was trespass, and the case was this: In the year 1839 one Jennings was the owner of certain premises along a highway. A school-house stood upon the highway and upon said premises, and Jennings' fence began to diverge from the highway at a point forty-five rods from the school-house, and continued so to diverge until it ran behind the school-house leaving a strip of land unfenced upon the highway side, between the highway and the fence, and extending up to the school-house. In that year Jennings granted, with full covenants, to the trustees of a certain school district the school-house in question. The description was as follows: " All that certain piece or parcel of land situate and being on lot No. 597 in the town of Virgil, and on the ground now occupied by the present school district, for the sole and express purpose of a school-house, to have and to hold the said piece or parcel of ground with the appurtenances, unto the said trustees and inhabitants of the above named school district, their heirs and assigns, forever."

---
Ogden *v.* Jennings.
---

The school buildings consisted of the school-house proper and two outhouses. They had been used for a school, for several years before 1839, and continued to be so used until the bringing of the action. And during all that time down to 1868, the children had used the land surrounding the school-house, including the strip described, for a play-ground.

Subsequent to 1839 Jennings conveyed the farm to one Holmes, and it afterwards, in 1864, came into the hands of the plaintiff.

In 1868 the plaintiff ran a fence along the road to within four and four-fifths rods of the school-house, and fenced out the land between. This fence was removed by the defendants by direction of one of the three trustees of the school district, and the plaintiff brought his action of trespass.

The judge charged the jury that the grant to the school district carried with it, as appurtenances, all such uses or privileges of the land around or adjoining the school-house, only, as was necessary to the beneficial enjoyment of the school-house for school purposes. And he left it to the jury to determine how much was necessary. He also charged, that if the trustees had "occupied the land in dispute, claiming title thereto adversely to the owners and occupants of the plaintiff's farm for twenty years before the building of the fence in question, they had acquired title by adverse possession. And that if the jury found adversely to the plaintiff upon either of these questions, they must find a verdict for the defendants. He also refused to charge that the defendants could not justify under the authority of one trustee only.

The jury found a verdict for the defendants, and the plaintiff moved for a new trial.

*W. H. Shankland*, for the plaintiff.

*McDowell & Edwards*, for the defendants.

P. POTTER, J. The jury having found a general verdict for the defendants, if either of the propositions submitted is incorrect there must be a new trial.

As it appears to me, that there must be a new trial in this case for certain errors occurring on the trial, it may be proper as a guide to the parties on such new trial to give our views upon certain points that must of necessity then arise. And first, as to the rule of construction of the terms of the grant to the school district, in the deed from Jennings. This relates more especially to the extent of the grant; that is, What does it convey? Its language is, "All that certain piece or parcel of land situate and being on lot No. 597 in the town of Virgil, and on the ground now occupied by the present school district, for the sole and express purpose of a school-house; to have and to hold the said piece or parcel of ground *with the appurtenances*, unto the said trustees and inhabitants, their heirs and assigns, forever." This is followed by a covenant for quiet enjoyment of the same, *with the appurtenances*. First, their deed is not void for uncertainty as to its location. It is certain as to that. It is not denied that it conveys all the ground actually occupied by the school-house building, but the plaintiff denies that it conveys anything more. In this he is in error. The words "for the sole and express purpose of a school-house," are words that express the *purpose*, and not the *limitation* of the grant. The plaintiff is privy in estate to the grantor; he is bound to acknowledge the extent of the grant to be all that was the intent of the grantor. The grantor omitted to define by metes and bounds the extent of the grant, if "appurtenances" have any meaning. And yet in the very language he employed in the grant, and in the surrounding circumstances as proved on the trial, the intent is manifest that something more than the ground actually occupied by the school-house building, was intended to be conveyed. Confined to the land,

Ogden *v.* Jennings.

strictly, as described in the deed, the property could not be practically enjoyed for the purposes for which it was conveyed, and so construed, the term "appurtenances" would be employed without use or meaning, which is not the rule in such cases, especially against the grantor. The conveyance was, of a piece of land *upon* the ground occupied by the school district. This implies that they *occupied* more than the ground under the school-house. This implication is made certain by proof. The conveyance was also of the appurtenances, which also implies something more. I understand the rule in this respect to be, that upon a conveyace of land, whatever is in use for it, as an incident or appurtenance, passes with it. Whether a right of way, or other easement is embraced in a deed, is always a question of construction, having reference to its terms not only, but to extrinsic facts also, and, to the practical incidents connected with the grantor, and with the use of the land, at the time of the conveyance. The law gives such a construction to the conveyance, in view of what is thus used with the land, as an incident or appurtenance, that such incidents or appurtenances are included in it. In such cases the intention of the parties is to be learned from those facts. (*Huttemeier* v. *Albro*, 18 *N. Y.* 51, 52.)

Now applying these rules to the case before us, it is seen, that at the time of the grant, the school-house in question was occupied and enjoyed in connection with a wood-house connected with or slightly separated from it ; with a building for a privy, distant and southerly forty feet from the school-house; with a passage way of eight feet in width between the school-house and fence on the easterly side of the school-house building ; and the building was usually banked around in winter. The door of the school-house being on the southerly side, an entrance could only be made by an entrance upon grounds to the south of the building ; and vacant grounds northerly and southerly of the building were

Ogden *v.* Jennings.

used and occupied as play-grounds for the children who attended school, and these had been so used for years before, and ever since, and for a period of more than thirty years have been in such undisturbed use. These, to some extent, were appurtenances to the estate granted. All these were necessary to the commodious enjoyment of the grant. There were no metes or physical bounds to the grant, and except the limitation by a fence on the easterly side of the *locus in quo* there was no limitation to the use. A highway was on the westerly side, and a creek on the south. There was a triangular space of thirty-five rods northerly lying vacant, bounded by the old fence on 'the east, and the highway on the west. How much of this space to the north, if any, was appurtenant to the premises conveyed was a material question on the trial, especially upon the question of damages. It is true, as the plaintiff requested to have charged, "that land is not appurtenant to land;" that is, the *title* to one parcel of land does not generally pass as appurtenant to another parcel which is not described in the grant; but we have authority for saying that when a man makes a feoffment of a house "with the appurtenances," the garden, curtilage, and close adjoining to the house, and on which the house is built, passes with the house. (3 *Saund. R.* 200, *n.* 2.) So it was said in *Bettisworth's case*, (2 *Co.* 517, 32 *n.*) "When a man makes a feoffment of a messuage *cum pertinentis*, he parts with nothing thereby but what is parcel of the house, *scillicet*, the buildings, curtilage, and garden." Lord Coke, in 1 *Inst.* 5, *b*, says: "By the grant of a messuage or house, *messuagium*, the orchard, garden, and curtillage doe passe; and so an acre or more may passe by the name of house." "For when the law doth give any thing to one, it giveth impliedly, whatsoever is necessary for the taking and enjoying of the same." (*Id.* 56, *a.*) In *Shepherd's Touchstone*, 94, it is laid down as follows : "By the grant of a messuage, or mes-

suage with the appurtenances, doth pass no more than the dwelling-house, barn, dove-house, and buildings adjoining, orchard and curtillage, *i. e.*, a little garden yard, field, or piece of void ground lying near and belonging to the messuage and houses adjoining to the dwelling-house, and the close upon which the dwelling-house is built at most. And so much may pass by the grant of a house. So that the quantity of an acre of ground, or thereabouts, in garden, orchard and outlet, may pass by either of these names; but more than this will not pass by the grant that is made by either of these words. Albeit more be intended to be passed by the grant.''

In *Doe* v. *Collins* (2 *T. R.* 498) a testator had devised as follows: ''I give the house I live in, and garden, to B.;'' it was held that the stables and coal-pen occupied by the testator, together with the house, passed without being expressly named, though the testator used them for purposes of trade, as well as for convenience of his house. Ashurst, J., said: ''The testator's intention appears to have been to give by the bequest of his *house*, with the word *appurtenances*, everything that was in his acceptation, as proper and convenient for the acceptation of the house.'' A grant of a lot of land bounded by a highway, or an alley, carries the grant to the centre of such highway or alley. Inasmuch, therefore, as the grant in the case before us could not be enjoyed for the purpose intended, without something beyond the ground occupied by the school-house building, as a question of law the grant is more extended; but as its extent, by metes and bounds, is not strictly a question of law for the judge to fix, it is properly a question of fact to be submitted to a jury upon proper instructions from the court. At the time of the grant there had been in use, if not set apart, certain grounds connected with the school-house. This is one of the facts which it is proper to take into consideration as to the intent of the grantor; and its subsequent use and enjoyment undisturbed, it is also proper

Ogden *v.* Jennings.

to consider. It is not necessary for the purposes of this action to decide, whether the title in fee, or the title to what passed as appurtenant, was a mere easement to the lands specifically mentioned in the grant.

It is true, that "appurtenant" is something belonging to, as an accessory, or incident to the thing granted, and is not therefore, perhaps according to more modern views, a conveyance of the absolute title to land, because it is defined to be of a different or another nature, as an easement, servitude, or collateral incident belonging to and for the benefit of the land conveyed; nevertheless, when an appurtenance is conveyed which the grantor has not defined, nor limited, the law will imply that he intended to convey, as an appurtenance, whatever is necessary for the taking and enjoying of the land actually conveyed;[b] and this is more especially the implication where such incidents were being enjoyed at the time of the grant. Assuming, then, that the conveyance was of but an easement in the *locus in quo*, still the school district and inhabitants thereof and the scholars attending, for whose benefit the grant was made, had the right to the free and unobstructed enjoyment of the the thing granted, and the plaintiff had no right to interrupt that enjoyment. The question therefore was, did the grant include the *locus?* That something was granted beyond the land described, was a question of law for the court. How much, or to what extent it was granted, was a question of fact, I think, for the jury. The *onus* of showing that the *locus in quo* did not pass by the grant, after the proof of its long enjoyment by the school district, and considering the indefinite terms of the grant, was, I think, upon the plaintiff. The plaintiff, though he may have possessed a right in common in the enjoyment of this easement for the purpose of access to his lands, could not erect a fence to deprive the school district of their easement, if it as an easement shall be found to have been granted to them.

The plaintiff's grantor, by the terms used in his grant, has created this uncertainty. The ambiguity he has made. The construction is to be most strongly taken against himself and his privies in estate. The trespass, if it be one, cannot be held to be wilful, and the damages can only be compensatory. The fact must first be found, whether the *locus in quo* is within the grant. If this should be found against the plaintiff, he ought not to recover solely on the ground that he was in the possession at the time of the alleged trespass, for *then* his possession was a temporary and tortious one. If the title to the *locus in quo*, whatever be its character, did not pass by the grant of Jennings, then the plaintiff is entitled to recover. If the easement only of the *locus in quo* passed by Jennings' grant, still the plaintiff's entry and his obstruction by making a fence was a disturbance of the rights granted as an easement.

The judge at the trial was therefore right in refusing to charge as requested, that the soil and freehold of the land where the fence was built did not pass to the school district, for the reason that such land was not covered by the description in the deed, and that it did not pass under the term appurtenances. One branch of this request certainly was erroneous. So, too, the judge did not err in refusing to charge that the said school district acquired no easement in the land where the fence stood, under the said deed.

But I think the learned judge was in error in submitting it to the jury to find as a question of fact, whether the trustees and inhabitants of the school district had occupied the *locus in quo* adversely for twenty years, and in directing them to find a verdict for the defendant if such adverse possession had been proved. I think there was no question of adverse possession in the case as it appeared in evidence. To make the defence of adverse possession, it must be accompanied with a claim of title exclusive of the rights of all others; and must

be definite, notorious and continued for twenty years, and this is so under the provisions of the Code, §§ 82, 85. In this case there had been no exclusive claim of title, other than that of occupation. There was no evidence of the exclusive occupation; there was no claim that was definite and notorious. There was no claim that was so exclusive as to cut off the right of the plaintiff from the use of the premises, as an easement for himself to pass from the highway, and give him access to his lands lying on the east side of the highway. If he possessed this right, or had exceeded it, then the possession was not exclusive.

If the plaintiff erected this fence upon lands appurtenant to the estate conveyed, the judge would not seem to have been in error in refusing to charge that license from one trustee, to the defendants, to remove the fence was not a sufficient justification, within the case of *Thayer* v. *Wright*, (4 *Denio*, 180, 181.)

To resist a trespass upon corporate rights, can hardly be said to come within the powers requiring the deliberate and formal assembling of the board of trustees, to make an order to institute action for corporate resistance. I do not know that this point has been adjudged except in the above cited case; but that seems to be authority for the act.

I think the case was not well presented at the trial, and was indifferently understood; and that there was error enough occurring on the trial to require a new trial. The result is that a new trial should be ordered, costs to abide the event.

MILLER, P. J., concurred.

PARKER, J. I think the deed to the district conveys only the land on which the school-house then stood, together with the right, as an easement, to continue the other buildings as they then stood, and a right of

way to them, and not the *locus in quo*, or the use of it as a play-ground.

Also, that there is no evidence of an adverse possesion of the *locus in quo* by the district.

The learned judge was wrong, therefore, I think, in not holding that no defence had been made out, and in refusing to direct the jury to find a verdict for the plaintiff for such damages as he had suffered. Also in submitting the question of adverse possession to the jury.

For these reasons, I am of the opinion that a new trial should be granted, with costs to abide the event.

New trial granted, with costs to abide the event.

[THIRD DEPARTMENT, GENERAL TERM, at Albany, January 7, 1873. *Miller, Potter* and *Parker,* Justices.]