Sedgwick, J.
The track of the defendants’ railway is in part upon Twenty-third street, from the North to the East river. The plaintiff is owner of the fee of a house and lot upon that street, and he resides there. He has no estate or interest in the soil of the street.
In the winter season of 1874-5, the defendant was in the habit (soon after the beginning of each snow storm) of sending over its track snow plows, as they are called. The effect was that the snow upon the track was pushed therefrom to the side, upon the street. A thin layer of snow would be left over the top of the track. A part of the snow at the side would, from time to time, be pushed back by passing vehicles, or fall back upon the track. Frequently, in the daytime, water from the melting of the snow would run and remain upon the track. This water, if not removed, would freeze at night, and prevent the running of cars. To keep the track fit for the running of cars, after the plow had passed, laborers would, in some instances, throw upon the pile at the side what snow was still upon the track, that they could shovel up, and a sweeper, so called, would be constantly sent upon the road, with revolving brushes, which would throw upon the pile at the side the thin layer of snow left upon the track, and the water from the melted snow. These acts would be continued as long as they were necessary to the keeping of the track in good order. The result was that the pile would freeze, throughout the most of its mass, to the hardness of ice. The size of this pile was greater or less according to the severity of the snow storms and the temperature of the air between the storms, and varied from eighteen inches to three feet in height. Its width at the base was at least as great as its height. It was prolonged *65 through the length of Twenty-third street by the side of the track. This ridge, hardened by settling and freezing, so occupied that part of the street on which it rested, that such part could not be used for any of the purposes for which a street is generally used. In substance, the strip of highway occupied by the ridge of snow ceased to be capable of public use—unless this occupation was, by reason of the defendant’s franchise, a public use. These acts and this condition of things continued for several weeks in the winter of 1874-5, and indeed until the high sun of the spring had melted the snow greatly, and then city officers caused it to be broken up by pickaxes. Although the winter of 1874r-5 was unusually cold, it is probable that every winter there will be occurrences of the same character;, and with the same effect; and the defendants claim toi do hereafter what they have done heretofore.
This exclusion of the public from the use of the-strip of the public street, as described, is a public-nuisance, unless the defendant has a right to do what has resulted in the exclusion. If the acts of the defendant are lawful, the inconvenience and damage suffered from them by the public or the plaintiff do not make the acts wrongful. If the acts of the defendant are unlawful, damage from them gives a cause of action (Kellinger v. Forty-second Street R. R., 50 N. Y. 206, 210).
The defendants’ rights depend upon the terms of its charter or grant of privileges in chapter 823, Laws of 1869, May 10. It has the “right, privilege and franchise, to construct, operate and use a railroad with a double track,” and the necessary turnouts and switches. It is “ authorized and empowered to lay, construct and operate a railroad ” with a double track, through and along Twenty-third street, and in all cases “the use of said street, for the purpose of said railroad, as herein authorized, shall be considered a public *66 use, consistent with the uses” for which the Mayor, Aldermen and Commonalty of the city hold said street. It is specially provided that such railroad shall run as often as the convenience of passengers shall require, and shall be subject to such reasonable regulations, in respect thereto, as the common council shall ordain.
The rules of construction in such a case are settled by 1 R. S. 600, § 3 (vol. 1 of Edmond's Ed. p. 557):
“ In addition to the powers enumerated in the first section of this title,* and to those expressly given in its charter, or in the act under which it is or shall be incorporated, no corporation shall possess or exercise any corporate powers, except such as shall be necessary to the exercise of the powers so enumerated and given.” The rule would have been the same at common law. “No rule of law comes with a more reasonable application, considering how lavishly charter privileges have been granted. As corporations are the mere creatures of law . . . it is perfectly just and proper that they should be obliged strictly to show their authority for the business they assume, and be confined in their operations to the mode, and manner, and subject-matter prescribed” (2 Kent Comm. 299. Page 298 to same effect, is cited in Halstead v. Mayor, &c. of New York, 3 N. Y. 433).
In Auburn and Cato Plank Road Co. v. Douglass (9 N. Y. 444), the learned court (in speaking of the extent or quantum of a franchise, which may be in a sense distinguished from a power), said, p. 453: “A corporation is strictly confined to the privileges conferred by its charter, and can take no implied rights as against the law-making power, a fortiori should it not be permitted to encroach by implication upon *67 the rights of individuals who are in no respect parties to the compact between the legislature and such corporation.” It was said the case involved “the great question whether acts of the legislative power, conferring special privileges, and parceling out the sovereign rights of the people, are to be construed strictly according to their terms, or liberally with a view to make the grant as beneficial as possible to the grantee ; whether corporations are to be content with what is expressly conceded to them by their charters, or are to encroach beyond the terms of those charters upon the legislative power, and upon the rights of individuals, and to take by implication whatever may be necessary or convenient for the exercise or essential to the value of their corporate rights.” The court then examined the views of Chancellor Kent, as expressed in Ms Commentaries, that in a grant of franchise, there was an implied obligation on the part of the State not to grant another franchise competing with the first, and destructive of the value of its first.
Another case in illustration is the Matter of Boston and Albany R. R. Co. (53 N. Y. 574). The company claimed the right to take, for purposes of its railway, land held by the village of Greenbush in trust for the use of the public as a public park or common. Its power in that respect was, by the statute, “to acquire title to any real estate required for the purposes of the incorporation.” But the court held that this did not include property already in public use under the sanction of the law. There was no implied supremacy of the particular public use over every other known to the law, so as to permit a railroad corporation to override every other appropriation of property to other public use.
Undoubtedly, if the legislature has constitutionally given the defendant the right it claims here, that right is dominant, and superior to every other conflicting *68 right that else would have belonged to the public or the plaintiff. But first, it must appear that the legislature has, in fact, given this dominant and superior right.
To sustain the defendants’ claim, the trite construction of the statute must show that the thing granted —viz., the franchise—has appended to it, as a necessary part of it, the right to use the strip of street exclusively as described, or that such use is necessary to the enjoyment of or exercise of some power given by law:
1. The grant is of the franchise to “lay, construct, and operate” a railroad through Twenty-third street, and the use of the street for that purpose is a public use. The use of no more of the street is granted than is necessary for the operation of the railway. After the snow has been cleared from the track, its remaining on the street, at the side, has nothing to do with it, and does not in any way affect the operation of the railway, using that term in whatever way it may be used. The deposit of the snow on the side has the same relation to the corporation that a deposit elsewhere would have, and no other. The use of the side has no other relation to the full existence of the franchise, than the stables for the horses, and the houses for the cars. There must be a place for the snow and stables and houses, but there is no intimation in the charter that the State has given a public place for them as necessary to the grant of the franchise.* In all these respects the defendant has only private rights, but is not the transferee of any public right (People v. Batchellor, 53 N. Y. 128, 140).
The whole statute, taken together, presents nothing to show that the legislature meant to give in the street *69 anything but a nse that might be fully enjoyed, as a public use and in common with the public, although with some inconvenience to the latter. If it were possible—and I think it is far more than possible—to avoid giving a construction which would involve indirectness on the part of the legislature, such a construction should not be favored. The act says that the use it intends to grant should be deemed consistent with the uses for which the city holds the street in trust. In finding out what is the use it intends, one should not unnecessarily be selected which is in fact inconsistent with a public use.
The convenience and inexpensiveness of using the street, at the side of the track, for a permanent place of deposit for snow, do not create of themselves any necessity that this use of the street is a part of the grant. If the grant can exist in all its parts without any such use, that use is not appurtenant or appendant to the thing granted, there being no previous connection between the two. Such is the rule in private grants (Marvin v. Brewster Iron Mining Co., 55 N. Y. 538, in Judge Folgee’s opinion). “If a-man grants to another the fish in his ponds, the grantee cannot cut the banks to lay the water dry, for he may take the fish with nets or other engines” (Park Grants, § 110; Hob. 234; Lord Darcy v. Askwith, cited in 1 Saund. 323).*
2. We consider is the right claimed necessary to the exercise or the enjoyment of any power of the defendant, making a distinction—if indeed there be one in this case—between the franchise granted to the defendant, and a power of the defendant as a corporation? The defendant claims that in exercising its powers to operate the road, it has the right to remove *70 the snow from its track in che manner it adopts, and therefore its right to leave the snow at the side where it is pushed necessarily attaches. It should be conceded that the defendant has the right and power to remove the snow in the manner shown by the testimony, and for this purpose to use the street on the side of the track. This, however, is because it is part of the act of removal. Any further use of the street is not necessary to the removal. There is no necessary connection between the removal and the protracted use of the street, and that construction should be avoided of which the result, as incidental to the right to remove snow, is a right to use the street in a manner which, according to the grant, is not necessary to the operation of the road.
Again, seeing that the act does not make a specific grant of the use of the street for the purpose claimed, and does not specify any particular manner of removing the snow, or any particular place where it may be left, the right of selection is in the defendant. There is no evidence of an intention to absolve them from those general duties which are imposed by law upon all others. The power of selection is limited by the obligation not to infringe upon public or private rights. The particular strip in question cannot be the privileged place of an infraction of the law, any more than would be a more distant piece of highway.
Practically, to sustain the defendant’s claim, we must read the act as if it had named the. street on the side of the track as the place where the snow might lawfully remain. Otherwise it might be construed that other parts of the street might be used, if the company chose another part, because of greater convenience to the operation of the road. The only reason for giving either construction is that the very great convenience of having a place on the highway as a place of deposit, coupled with the ruinous expense of *71 removing the snow from the side, make a case of necessity for the operation of the road. The evidence shows, I think, that it would be more convenient for the operation of the road, in some sense, if the snow could be removed a further distance from the track, and at a somewhat greater, but not ruinous expense. The result would be that, under their charter, the company could lawfully select the most convenient—and least expensive in cost of moving—part of Twenty-third street, wherever it was for a place of deposit for the snow, as necessary to the operation of the road.
The defendant has the right to remove snow from its tracks, because otherwise the road could not be “ operated,” It has the right to use the street at the side, so far as this is necessary to such removal. But at the point the necessity ceases, the right to use the highway ceases. All other acts of omission or commission, which involve a use of the street for snow, are unauthorized and unlawful. This is in analogy to the rule, as to the rights of way from necessity, and as to the use of the highway. After the reasonable use of the highway has been expended, a further use becomes an obstruction, and there is a duty on the part of the person causing it to remove it from the highway (People v. Cunningham, 1 Denio, 524; 3 Chitty on Cr. Pl., notes to indictments for nuisances to highway by actual obstruction). After the time had elapsed, which would be reasonably required for the taking away of the snow from the street, after it had been pushed from the track, the defendant became responsible for its remaining there and its being a public nuisance.
It seems to me, that the defendant was not so performing a legal duty, in removing the snow from its track under its obligation to keep its cars running, that it cannot be held responsible for any consequences of the removal. The duty it thus performs is attached to, and a modification of its grant of *72 privileges and franchises. In removing the snow, the defendant was enjoying its grant. It is not necessary to consider whether, under all circumstances, the defendant was obliged by law to clear its track of snow.
I am, further, of opinion that the plaintiff suffers an injury peculiar to himself from the public nuisance, and can maintain this action. The evidence satisfies me that his house is not so valuable as it would have been but for the obstruction of the street. The obstruction continued through a great part of the season, when the duties and pleasures of society were most urgent and multiplied. An isolated house, with no means of communicating with the world, would have little value. The obstruction was a daily burden upon the access to the premises that made them less desirable to live in and, to that extent at least, less saleable. Beyond this, the inconveniences caused had effects peculiar to houses upon the street (Milhau v. Sharp, 27 N. Y. 611, 628; Craig v. Rochester City, &c. R. R. Co., 39 Id. 404; Clarke v. Blackmar, 47 Id. 150; Kellinger v. Forty-second Street R. R. 50 Id. 206, 210).
I have now to consider several positions taken by the learned counsel for the defendant which have not been definitely alluded to.
It is urged that by the testimony there is no place to which snow could be carried without ruinous expense. As to the place, it does not appear satisfactorily that snow taken up within the period of time within which we think it the duty of the company to remove it, would be so impure that it could not properly be thrown in the river. The testimony is not sufficient to show that it would be impossible, or greatly difficult or expensive to procure other places of deposit. Full credence is given to the testimony of the defend ant on this point; but it does not appear that exhaustive efforts have been made to ascertain and procure *73 such places. As to the expense, the testimony that tends to measure it, is not sufficiently definite to enable one to say what in fact it would be. There is no doubt it would be large, but the calculations on the subject are indefinite. I should have supposed that it would have been practicable to ascertain what it would cost to remove the body of snow that falls on the track any given distance. But are the difficulty of finding places, and the expense to be considered in construing the charter, and in determining whether that meant that the street on the side should be used ? I am of opinion that the legislature had no regard to the expense, or to the matter of profit. On the one hand, a rate of fare was fixed ; on the other, the grant was to be given to such as chose to offer the highest sum for it. It is tobe implied from that that no inducement of profit or inexpensiveness was held out. If the expense was not considered by the charter, certainly the difficulty of finding a place was not, inasmuch as expending a sufficient amount would find the places. As we have said, the controlling consideration in construing the charter is, that by its terms the protracted use of the street as a place for the snow, is not a part of the use of the street for the operation of the railroad.
It is further said that the snow-fall is so great in this city that even if the defendant threw no snow to the side of its track, there would still be such heaps and piles that access to the curb in front of the house would not be possible, or at least would be as difficult as it was last winter. It cannot be denied that the de-. fendant’s acts increase the obstruction. From that increase the plaintiff should be protected, while he must bear what is unavoidable in the course of nature. At least he is entitled to that earlier opening of the street that would come in the spring, if the snow piled up by the defendant was not frozen and hardened by the processes used by the defendant.
*74 The plaintiff’s claim is resisted, because he contributed to the wrong he complains of by wrongfully and unnecessarily throwing snow from his sidewalk upon defendant’s track. It is proven that he habitually threw this snow into the street between the curb and the rail nearest the curb. This was not wrongful. Such a clearing of the sidewalk was directed by the city ordinance, and had regard to the convenience and health of foot passengers. These gave rise to a right superior to that of persons using vehicles in the roadway. There is a conflict of evidence as to whether the plaintiff did not on some occasions in the winters of 1874-5, cause his laborers to throw snow on the defendant’s track. If he did, he did it only on a few days, and what then happened did not affect the acts of defendant done on other days, and over a much longer time. By the evidence of Mr. Sharp, excepting the days when it is alleged the plaintiff threw snow on the track, the snow from plaintiff’s sidewalk was not thrown upon the top of the ridge made by the .defendant, but against its sides. In that the plaintiff used a part of the street he might lawfully use for the purpose.
The defendant, therefore, should be enjoined from forming upon Twenty-third street, at the side of its track, piles out of the snow removed from its track by the snow-plow or other means, except for the purpose of having the same taken away within a time reasonably required for such taking away.
It is argued that such an injunction is too vague in its requirements, and that no one can separate the snow pushed to the side by the plow, and the snow otherwise placed there. I do not feel that there will be difficulty in complying with the injunction. What is reasonable time has been proved, even when it was necessary to show that to convict of the offense of public nuisance in using unreasonable time. Atten *75 tion will discover what part of the snow at the side comes from the track. Courts of equity have required the exercise of as much discrimination and judgment as will be called for in the present case (Aikin v. The Western Railroad Corporation, 20 N. Y. 370; McKeon v. See, 51 Id. 300, affirming 4 Robertson, 449).*
I have not neglected to give respectful attention to the opinion of the learned judge, who decided the motion for a preliminary injunction, in Johnson v. The Christopher and Tenth Street R. R. Co., adversely to it. I would gladly have followed that decision without further examination, if it had been made upon a final hearing. The present case being a trial of the issues, called for such an examination of the merits, that I have come to the opinion I have expressed.†
*76 The judgment (omitting formal parts) was settled in the following form:—
“Adjudged that the defendant, the Twenty-third *77 street railway company, has the right to remove the snow from its tracks to the side of Twenty-third street by means of a snow-plow and sweeper, as heretofore *78 used by the defendant, for the purpose of enabling its cars to pass along the tracks. It is further adjudged that the defendants, the Twenty-third street *79 railway company, be, and it is hereby restrained from leaving the snow so removed heaped np between said track and the plaintiff’s premises, known as Number 38 *80 East Twenty-third street, for a longer period than may be reasonably required for the taking of such snow away from such portion of Twenty-third street.”
Costs were also awarded.
No appeal was taken.

 Title 3 of chap. 18, entitled “ Of the Powers, Privileges, and Liabilities of Corporations.”

 See N. Y. and Canada R. R. Co. v. Gunnison, 1 Hun, 496; N. Y. Central, &c. R. R. Co. v. Metrop. Gas Light Co., 5 Id. 201.

 Compare Voorhees v. Burchard, 55 N. Y. 98; affirming 6 Lans. 176; and see 57 N. Y. 68; 4 Hun, 239; 5 Id. 112; 66 Barb. 301.

 And modifying McKeon v. Lee, 28 How. Pr. 238.

 The decision on the motion for a preliminary inquisition in the case referred here to is as follows:
Common Pleas,—Special Term (February, 1875). John Taylor Johnston v. The Christopher and Tenth Street Railroad Co.
H. H. Anderson, for plaintiff.
O. E. Bright, for defendants.
Robinson, J.—The present is a motion for an injunction pendente lite, made by the plaintiff as owner of a dwelling house and stables, occupied by him, and situate on the southwest corner of Fifth Avenue and Eighth street, in this city, against the defendants, a railroad corporation exercising the franchise of running and operating a railroad with a double track in and through Eighth street, and past the premises of the plaintiff, under the grant made by chap. 301 of the Laws of 1873, to Lewis May and others. The plaintiff complains that the only and convenient mode of access which he has, and for a long time has enjoyed, to his said premises, for various purposes incident to his domestic affairs, and the use of his basement, yard and stables, is by way of Eighth street, and that such convenient and accustomed access to, and use of his premises is unlawfully obstructed, after falls of snow, by defendants’ use of snow-plows, and sweeping or brushing machine, in removing the snow and ice from off their tracks into the space between the lines of their track and *76 the curb and gutter, and on to the sidewalk in front of his premises on said street, thereby heaping up the snow and ice, and leaving it in so abrupt a ridge in such a space as prevents him from ordinary access to, and use of his said premises; that he, in obedience to the ordinance of the city (article 1 of chap. 23), removes the snow and ice from the sidewalk and gutter on said street opposite his premises, and leaves it, so as to admit of a convenient passage by horses, sleighs and carriages, but such disposition thereof is interrupted and disarranged by such use by the defendants of their snow-plows, and sweeping or brushing machines, shovels, and other means, that throw to the sidewalk and gutters, the ice and snow that he had previously cleared therefrom, thereby making it impossible for him to obey said ordinance, and exposing him to the penalty thereby imposed. This substantially constitutes the gravamen of the complaint, and of the special injury which plaintiff alleges he sustains by such acts of the defendants. Upon this case an injunction is asked. In response to this, defendants show, that the means adopted by them in the use of their snow-plows and sweeping or brushing machines, are but such as are commonly and ordinarily used by railroads for efficiently removing snow from off their tracks, so as to fit them for the early and speedy transit of passenger cars, and that they have therein done no unnecessary or intentional damage to any one. In deciding the present motion, it becomes necessary, briefly, to consider the relative rights, duties, and privileges of the respective parties.
The streets and avenues of this city are held and enjoyed for the common and public use. Ho one, unless under some special privilege conferred by statute, possesses any greater right therein than another. Access to and use of the public streets in 'front of or adjacent to the premises of any citizen, or such other use of the public street as is necessary to his private purposes, and as usually enjoyed, is a right, which, if interfered with by any unauthorized obstruction, such interference becomes a private nuisance, for which, if specifically incommoded, he is entitled to redress for such injury as he sustains thereby. But such use and enjoyment of the public street, the title to which is in the public (as is the case in respect to the streets in this city, opened under any of the public laws, and as is to be assumed in respect to Eighth street), even including that of the ordinary easement of common passage and transit, *77 is dependent upon the legislative will. The streets and avenues of the City of Hew York are, with few if any exceptions, owned in fee by the public, and are subject to the absolute control of the Legislature, by which they may be entirely closed (as has been done in various instances), without redress to any one accustomed to use them, or whose use thereof constitutes a main incident to the ownership of the adjacent property. If deemed necessary or proper by the Legislature, it may grant the use of a street or avenue to the exclusive purposes of a railroad, or to any other particular kind of traffic, and exclude therefrom all others of a different character. This power of the Legislature, while absolute, is only subject to moral control, operating upon the consciences of legislators as to their duty in enacting such laws, as will insure the greatest good to the greatest number, and inflict no unnecessary injury upon any one. In the course of legislation cases are constantly occurring where laws are enacted for the public good, which seriously prejudice the interests of particular individuals, and this constitutes but such a sacrifice of private interests as every one is in a greater or less degree called upon to make for the benefit of the community in which he lives.
The grant by the Legislature of such a franchise as that held and enjoyed by the defendants, confers upon the grantees a special privilege beyond that which is possessed by any citizen as of common right (Bank of Augusta v. Earle, 13 Peters, 595). To the extent of the legislative grant under consideration, it confers privileges and imposes duties to be performed for the convenience or benefit of the public. The right to thus run and operate a railroad through one of the public streets, while inconsistent with the easement enjoyed in common by every citizen, is dominant and paramount thereto, and such common right must yield and become subordinate to the purposes of the franchise. The special privilege conferred by the Legislature involves not only what is given or conferred in express terms, but also, as incidents, all such other powers as shall be necessary or essential to the exercise of these so enumerated and given.- All inconsistent statutes and city ordinances are to that extent repealed. As to all interferences with such a grant, Chancellor Kent says (3 Oom. 459): “The common law contained principles applicable to this subject, dictated by sound judgment and enlightened morality. It declared all such invasions of franchises to be nuisances, *78 and the party aggrieved has his remedy at law by an action on the case for the disturbance, and in modern practice he usually resorts to chancery, to stay the injurious interference by injunction.” As to incorporated railroads, this protection is further ensured by section 43 of the general railroad act, which makes it highly penal to stop or obstruct their operation. With the rights thus conferred with a view to the public convenience, the duty is also imposed upon the grantees of such a franchise ‘:to provide and maintain facilities for accommodating the public at all times, with prompt and convenient passage ” (3 Kent, Oom. 458-9). In the adoption by the defendants of the use of the snow-plow and sweeping-machine, for the purpose of speedily removing the newly-fallen snow from their tracks, it abundantly appears that in order to perform the duty imposed upon them by law, this use of such machines affords the only known means by which it may be accomplished efficiently and economically. On the argument this being made clearly to appear by the opposing affidavits, it is still argued by plaintiff’s counsel that his clients were injured by the defendant’s suffering the snow thus swept by such machines on to the intervening space in the street, between the railroad tracks and the sidewalk, to remain in conjunction with the snow he, in compliance with the city ordinance, had shoveled or thrown from off his own sidewalk and street gutter, and had reduced or fashioned into a passable roadway, as by so doing they destroyed such roadways and formed heaps of snow therein as rendered them impassable by ordinary vehicles, and constituted such an unauthorized interference with his access to his own premises as entitled him to a remedy by injunction. This argument is founded upon a misconception of the relative rights and duties of these parties. It would be entitled to some force were it urged as between parties having a common right in the public street. Should any person vested with no special privilege attempt to do this for his own convenience, in facilitating the passage of heavy vehicles, or those of such character as required for their convenient passage that the snow should be removed from their tracks, as is required for the passage of railroad cars of the defendants, it might fairly be a question to what extent one citizen might thus, on occasions, persistently and to such extent, subject the public street to his own private convenience and to the inconvenience and special injury of others; but in consideration of the entirely different privi *79 leges and duties of the parties to this action in or to the use of Eighth street, it seems clear that the defendants, by virtue of their franchise, fully possessed the right, as against the plaintiff and every one else, to adopt the summary mode complained of to remove the snow and ice from off their tracks, and to such distance therefrom as to insure its not being again accidentally thrown thereon, so as to further obstruct the passage of them cars; that in thus exercising their privilege and performance of the duty of clearing their tracks, no other or further duty devolved upon them of subsequently removing elsewhere from the street, or its severance from the mass of snow previously accumulated between their tracks and the sidewalk, or to cart away the additional amount they had caused to be thus thrown thereon from off their tracks. The enforcement of such a subsequent duty would be in the nature of an operative or working injunction; mandatory rather than prohibitory, and finds no countenance in the principles of equity under which an injunction is to be granted. The trivial and accidental occurrence of the throwing of snow by the plows and sweeping-machines on to the sidewalks might be justified under the like principles, as before stated, as they are parts of the public street: but, as it is shown that the improved machines recently used remedy any such accident, there is no ground of complaint left for consideration requiring any such summary remedy as an injunction. Under these views, I am of the opinion the motion for an injunction should be denied, and it is so ordered, with ten dollars costs to defendant.”
In the case of The Chbistopheb & Tenth Street R. R. Co. v. The Mayob, &c. op New York, in the Supreme Court, a motion for a temporary injunction was denied.
Donohue, J.—In this case the plaintiffs own and operate, under a special charter, a railroad through Tenth and other streets, in the city of New York, and they complain that the police commissioners and the defendants are throwing the snow on their tracks in such a way as to impede the use of the railroad. I do not understand any claim to be made by either the defendants or the police commissioners that they have the right to generally place the snow on the plaintiffs’ tracks, but the claim is that the plaintiffs, by their snow-plows and their street-sweeping machines, having thrown the snow off the tracks on the side of the street, thereby making an accumulation that seri *80 ously interferes with the use of the street, the defendants have the right to replace the whole or some part of the snow on the tracks to improve the use of the streets. The first question raised is on the right to use the means employed by the plaintiffs to clean their tracks, by which the alleged obstruction of the street has occurred. This subject has received the attention and thorough consideration, within a few weeks, of a court possessing a jurisdiction co-ordinate with this court; and aside from the ability and learning of the judge who considered the case, that decision is entitled to the same consideration as the judgment of one of the judges of this court.
The opinion delivered shows a thorough examination of the case, directly on the point in question; and, even if not fully concurring, I would hesitate in declining to follow it.
The difficulty, on the part of those attempting to restrain the use of the means employed by plaintiffs in clearing their tracks, is that the legislature seems to have looked solely at the railroad corporations, and the courts have so construed the rights granted.
I shall therefore follow, until a contrary rule shall be made, Judge Robdtson’s decision, especially as it applies to this very road on this very right. The only question left is, whether, if the railroad company have a right to do what they have done, have the police commissioners the right to undo it ?
It seems to me this must be answered in the negative; because if the snow is so replaced on the track the same sweeper can be resorted to to put it off; and if the right is so possessed to clean their road, it must carry with it the right to have the road left free. The right to clean must include the right to have the road free from interference of this kind. Whatever inconvenience or disregard of private right there may be in the matter, redress must come from the power that placed matters where they are. It is to that the parties must be remitted.
Motion granted.