Day, J.
This action relates to tbe property rights of the respective parties in a piece of land 30 feet wide arid 120 feet long, ont of what, prior to vacation, was Miller avenue in the Mount Union College Addition to the city of Alliance.
*505 The plaintiff’s claim is based upon its rights under a land contract and deed from defendants. The defendants’ claim rests upon their rights as abutting owners when Miller avenue was vacated, which rights they claim to still own and never to have aliened.
The plaintiff, claiming to own said piece, seeks to enjoin defendants from excavating and erecting structures on said premises, and asks to have its title quieted therein.
The defendants deny the right of plaintiff in said land, averring that they are in possession of the premises, and ask to have their title quieted.
The facts undisputed are:
1. That William Nixon owned about 175 acres in Sec. 35, • Twp. 19, Rg. 6, Stark County, Ohio, adjacent to Mount Union College grounds.
2. Mount Union College owned for many years the tract known as Mount Union Campus, originally acquiring .title from William Nixon, to the tract north thereof, including the property in controversy about 1875.
3. On May 18, 1869, William Nixon conveyed a piece 60 x 120 lying in about the center of his land, lying just northeast of the college tract, to E. J. Leeper, the 60 x 120 lot afterwards owned by the defendants. Yol. 128, P. 417 Stark Co. Records.
4. In 1889, Mt. Union College campus was laid out (Plat Book 3, page 104) at which time the Leeper tract seems to have been designated on the plat as “Out-Lot 236”, Stark Co. Atlas, 1896, p. 96. (Leeper tract.)
5. In 1902, Edith and W. J. Leeper sold to Theodore Mistelski.
6. In 1907, Theodore and Elizabeth Mistelski mortgaged to Walter Miller, which mortgage was, in 1912, assigned to Yiola Miller. (Yol. 448, p. 449, Mortgage Records, Stark Co.)
7. In 1909, Theodore Mistelski conveyed the premises to his wife, Elizabeth Mistelski. (Vol. 501, p. 139.)
8. In 1910, the city of Alliance vacated Miller avenue from College street to Simpson street.
9. In 1912, land contract was executed between the parties for the sale and conveyance of the 120 x 60 feet along Miller *506 avenue. The description of the property in the land contract is as follows: '
“Situated in the city of Alliance, county of Stark and state of Ohio, and known as Lot sixty (60) feet front on College street and extending north along Miller avenue one hundred and twenty (120) feet, and further described as follows: Beginning at the corner of Miller avenue and College street; then extending north along the east side of Miller street one hundred and twenty feet (120) feet; thence east and parallel with College street sixty (60) feet; thence south and parallel with Miller street one hundred and twenty (120) feet to College street; thence west along the north side of College street sixty (60) feet to the place of beginning, together with all the privileges and appurtenances to the same belonging. ’’
10. In 1913, April 12th, Elizabeth and Theodore Mistelski executed deed to Mount Union College.
11. In 1913, April 12, Letter from David Fording to Mistelski demanding sufficient deed or return of money.
12. July 30, 1915, petition for injunction in this action filed when it appeared defendants had entered upon the premises in question and were about to erect structures thereon, and cross-petition by defendants asserting ownership, and asking quieting of their title.
A solution of the problem here presented requires a determination of what species of property Elizabeth Mistelski acquired upon the vacation of Miller avenue.
The general rule with reference to the rights of abutters on vacated streets is well stated in McQuillan’s Municipal Corporations, page 3008:
“The effect of the vacation is to extinguish the public easement and to relieve the municipality from any duty to keep the street or alley vacated in repair. Sometimes a street is vacated for a quasi-public purpose and the purpose is stated in the vacating ordinance. In such a ease, the title may be vested in the person or company for whose benefit, in conjunction with the public benefit, the street is vacated, although he is not an abutting owner. Ordinarily, however, the street or a part thereof, is vacated solely for a strictly public purpose and in such a case *507 the question presents itself — in the absence of legal regulation— whether the title to the street, on such vacation, becomes vested (1) in the municipality, or (2) m the abutting owner, or (3) in the original dedicator of the street.
Except where there is a statute to the contrary, which expressly provides in whom the title shall vest, the general rule is that upon the vacation, discontinuance or abandonment of a street or alley the absolute title to the land covered thereby reverts to the owner of the fee. If the abutting owner is the owner of the fee, the reversion is to him and he takes title to the center of the street unaffected by any interest of the public, if the fee to the street or alley remained in the original proprietor or a remote grantor, the title generally reverts to him and not to the abutting owner.
On the other hand, if the title of the fee of the street is in the municipality, the decisions are not uniform as to who obtains the fee on vacation, the matter being complicated by statutes in some jurisdictions. In some states, the fee remains in the municipality. In other states, by statute or otherwise, the fee reverts either to the original owner of the fee, or to the abutting owner, if the state is the owner of the fee, then it generally becomes the owner of the street on its vacation.
Oftentimes, this title of the abutting owner free from the rights of the public which existed before the vacation of the street, is held to be in the nature of an accretion to the adjacent real estate without reference to the ownership of the fee of the street.
Of course, if the deed to the abutting owner either expressly reserves to the grantor the title to the street, or the circumstances justify the inference of intention not to convey a fee to any part of the street, the grantor remains the owner of the street, and in its vacation the title is in him as against the abutting owner. In all such eases the intention of the grantor governs, but inasmuch as a deed is most strongly construed against .the grantor it will ordinarily be presumed, in the absence of express words to the contrary, that the grantor intended to convey his entire title to the frontage in the street. However, if the street is vacated while the original proprietor and platter owns the ]ots, and thereafter he conveys1 a lot by metes and bounds, and subsequently conveys to another person what was originally the street in front of such lot, the latter grantee obtains a good title thereto.
If a plat of a street is vacated by the original proprietor before the dedication is accepted by the city and before any of the abutting lots are sold, then, of course, a proportionate part of the street does not become a part of each abutting lot. ’ ’
*508 In Ohio, .the rule gleaned from the authorities seems to be as follows: Upon vacation of a street the abutter acquires by accretion a base or limited fee, subject to the easement of egress and ingress from the abutting property in the old street. This rests on Stevens v. Shannon, 6 C. C., 142, which holds:
“The vacation of the streets and alleys of a duly established addition to a municipal corporation extinguishes the interest of the public therein, and the title to such streets and alleys vests in the owners of the abutting lots.”
The Supreme Court of Ohio, in Kinnear Mfg. Co. v. Beatty, 65 O. S. 264, held as follows:
“Where a street or alley is vacated by a city, the vacated portion reverts to the abutting lot owners, subject, however, to such rights as other property owners on the street or alley may have therein, as a necessary means of access to their property.
“A property owner on a street or alley, a portion of which other than the part on which he abuts, is vacated by the city council, has no right to enjoin the obstruction of the vacated portion by the owners to whom it reverted, where he has reasonable access to his property by other streets and alleys, although the distance he may have to travel in some directions may be greater than before the vacation. To entitle a party to any relief in such cases, the inconvenience he suffers must differ in kind from that of the general public, and not only in degree.
“The rights of the lot owners in an addition, on the plat of which the streets and alleys are indicated as dedicated to public use, are no greater than, nor different from, the rights of other lot owners upon other streets of the city.”
In Callen v. Electric Light Company, 66 O. S., 166, 174:
“Naturally, it would be presumed that the right of reverter would remain either in the original proprietor, or would pass to and vest in .the owners of the abutting lots. That, as between these two classes, the interest is in the owner of the abutting lots, was held by this Court in Stephens v. Taylor, Ex’r, 51 O. S., 593, where a street had been vacated by the city and the question presented was whether the fee reverted to the heirs of the original owner who dedicated the street, or to the owners at the time of the vacation of the lands abutting.”
*509 And in Traction Company v. Parrish, after stating the rule as to roads in .the country, 67 O. S., 181, 190, it is held:
“But in municipalities the fee of the streets is in the city or village, in trust, however, for street purposes, Section 2601, R. S.; S, & C. 1083; Street Railway v. Cumminsville, 14 O. S., 523; City of Columbus v. Alger, 44 O. S., 485; and Callen v. Electric Light Co., 66 O. S., 166.
‘ ‘ The fee being in the municipality in trust for street purposes, the abutting lot .owner, in addition to his easement in the street for passage and repassage in common with the general public, has a special easement in the street appendant and appurtenant to his lot for ingress and egress; and when the street becomes vacated the public thereby surrenders, or more properly speaking, legally abandons the public use thereof for travel, but the private or special use or easement adheres to the abutting lots, and becomes part and parcel of them as by accretion, so as to preserve. the right of ingress and egress to the lots over the land that formerly formed the street or part thereof. The reason that a street when vacated 'becomes a part of the abutting lots, is not because the owner of the lot owned the fee of the street, but bcause it must go there by necessity, to preserve his easement of ingress and egress, which in many cases is a valuable property right, and without which the lots might be of little value. The street being vacated and abandoned, the public no longer owns it, and it must either revert to the original owner, or adhere to the abutting lots by accretion. As the original owner is presumed to have received full value for the street -when he sold the lots, there is no just reason why he should not have the street, when vacated, restored to him. And as the lot owners and those in the line of title have paid an increased price by reason of the easement in the street, it is only, just thát -when the street becomes vacated, the easement should be preserved to them by addition of the vacated street to the lots, and therefore, this doctrine of accretion in such eases has been adopted in this state, and generally elsewhere.”
In the light of the above authorities, it seems settled that the city owns its street in fee, — not in fee .simple, but as a base, qualified or terminable fee. The qualification of such fee is that the city owns the land between the street lines in trust for street purposes. A qualified fee, as defined by Blaekstone, is:
‘ ‘ The estate is a fee because by possibility it may endure forever in a man or his heirs, but as that duration depends upon *510 concurrence of collateral circumstances which qualify and debase the purity of the donation, it is therefore a qualified or base fee.”
The city when it acquired the title to this street did not acquire a private proprietary title. Zanesville v. Telegraph & Telephone Co., 64 O. S., 67, 68.
While it acquired a fee, it was a base, qualified fee, or a terminable fee; it was subject to the property rights of abutting owners, — namely, that of ingress and egress; the property rights existent in the land between street lines, and over and above the property rights or easement of abutting owners must follow the fee and belong to the municipality.
Now when the city vacates and abandons its right in the premises, whatever property or proprietary rights it had in the premises, by operation of law, by accretion, went to the abutting land owners; so that the title or proprietary right or interest which by operation of law came to Elizabeth Mistelski upon the vacation of this street, was this species of a qualified or base fee in the 30-foot strip, — a fee subject to an easement. Did this interest, whatever it may be, pass by virtue of the terms “together with all the privileges and appurtenances to the same belonging”?
“It is a general rule that upon the conveyance of property the law implies a grant of all the incidents rightfully belonging to it at the time of conveyance, and which are essential to the full and perfect enjoyment of the property.”
“Land does not as a general rule, pass under conveyance as an appurtenance to land. It may so pass, however; where such appears to have been the intention .of the parties, and the word ‘ appurtenances ’ may when construed in connection with the nature and subject of the thing granted be sufficient to pass title to land as an appurtenance thereto.” 13 Cyc, 639, 640.
“Appurtenances” as used with reference to conveyances of realty, means and includes all rights and interests in other property necessary for the full enjoyment of the property conveyed. Jackson v. Trullinger, 9 Oregon, 393-398; 13 Cyc., 640; 4 Corpus Juris, 1469.
*511 In R. R. v. Moffitt, 94 Mo., 56, it was held that a conveyance of a line of railroad would pass a tract of land continguous thereto; and in Ogden v. Jennings, 66 Barb., 301, the Court holds that the conveyance of certain lands for the purpose of a schoolhouse, “with appurtenances” conveyed-a strip of ground necessary for the purposes of a playground; and in Gorton v. Rice, 152 Mo., 676, it was held that the accretions passed on the conveyance of a fractional quarter section.
It should be noted that the land contract uses the words “privileges” as well as “appurtenances;” the word “privilege” means an advantage, a special right. A passage in Dillingham v. Roberts, 75 Me., 469, reads as follows;
“Where the description in a deed for a parcel of land bounds the premises upon one side by ‘the shore of the stream at high watermark,’ and then adds the words ‘including all the privileges of the shore to low watermark, ’ the land between high and low-watermark passed to the grantee. The word ‘privileges’ although not a very appropriate term to use in describing the owner’s title to real estate, may be used without doing any great violence to its legitimate meaning. An estate in fee simple is, in one sense, no more that the privilege of -holding land by a certain tenure. Such a holding may be described as a privilege, without doing violence to the term. ’ ’
It is, therefore, in furtherance of this doctrine, noted in the above authorities, that the -plaintiff claims to be the owner of this property in the 30xl20-foot piece, and relies to a considerable extent, on Keer v. Commissioners of Franklin County, 42 Ohio Law Bulletin, 193, which reads:
“Where the owner of a city lot conveys the same by deed describing the same by its platted number as the same is numbered and designated upon the recorded plat thereof, such a deed by its terms will also qonvey to the grantee the vendor’s right, title and interest in and to the vacated part of an adjoining highway shown on such plat, in the absence of express words to the contrary.”
Paine v. Consumers’ Storage & Forwarding Company, 71 Fed. R., 626, held as follows:
*512 “Where a grantor bounds a lot conveyed on a described street and is the owner of the land embraced therein, he is estopped to deny the right of the grantee to use the land for street purposes, whether it be in fact a street or not; and the same effect is given to a deed describing the lot by number and reference to an undedicated plat upon which the lot is shown to front on a street. ’ ’
As opposed to this claim, the defendants contend that having conveyed by metes and bounds along a street theretofore vacated, that thereby they only conveyed the property within the described boundaries, and no more. In support of this contention, reliance is placed chiefly on White v. Johnson, 110 Minn., 276; Lough v. Michlin, 40 O. S., 332; Lockwood v. Wildman, 13 Ohio, 430; Lembeck v. Nye, 47 O. S., 336.
In White v. Johnson, certain differences of fact must be noted. Allie Hewitt owned all the land and laid it out as lots 23 and 24, between which was platted LaSalle street; it was vacated while Hewitt was still the owner, and became as though no street had existed. Now, in Minnestoa, it seems to be the rule that the effect of this was as though no street had ever existed. The ownership of the lots being the abutting, ownership and the ownership of the fee in the street, whatever it be, was all vested in one and the same individual, before any conveyance was made. Now had any other person than Hewitt owned one of these lots prior to dedication, — the rule in Ohio, as stated in the 67 O. S., p. 264, — would be the fee subject to the eastment, by accretion passed to the abutter. The rule of accretion is entirely different from the doctrine of White v. Johnson, and there is nothing in the ease further to show that the words “privileges and appurtenances thereunto belonging” were considered or urged as having any bearing upon the question of what property right passed by the conveyance in question. The bare and naked question of what became of the fee upon vacation was considered, and there is no recognition of the easement of the abutter still existing regardless of who may own the fee, such as is the rule in Ohio.
In “Elliott on Roads and Streets” the author, while recognizing the doctrine contended in White v. Johnson, in Section 1192, recites as follows:
*513 ‘ ‘In the chapter on highways as boundaries and incumbrances, the reasons are given for the general rule that abutters are presumed to own to the center of the highway, and it is stated that it is very unusual and 'almost unprecedented for a landowner to sell the abutting property and at the same time retain the fee of the highway subject to the public easement; but, as intimated in the last preceding section, there is no legal objection to his doing so. These propositions are also laid down in a very recent decision by the Supreme Court of Minnesota, but a distinction is drawn as to the presumption where the highway has been vacated before the conveyance of the land. The court holds that where a street has been legally vacated before any lot has been transferred, the reasons for imputing or presuming an intention to transfer the title clear to the center of the street have ceased, ‘the proprietor holding the land free from the easement as land when he parts with lots abutting it,’ and that title to a tract of land accurately described by metes and bounds on the plat passes, but does not include a distinct parcel. As the case seems to be correctly decided and the opinion contains an elaborate review of the authorities, although there may be some statements in it that admit of some doubt, we quote from it freely below.”
Adverting to eases relied upon by defendants, Lembeck v. Nye, Lough v. Michlin, Lockwood v. Wildman, are not so like in point of fact and circumstance to the case at bar as to require the adoption of the principle of a hard-and-fast rule that nothing except that which lies between the boundary lines named in a deed wherein the language ‘along’ a highway or street is used, shall pass to the grantee.
Elliott on Roads and Streets, in Section 916, uses this language:
“Some courts have carried the presumption that the grantor intended to convey his interest in the highway so far as to hold that where the descriptive words are ‘by the side of,’ by the margin of, ’ ‘ along the south line of, ’ or the like, the grantee "will take to the center of the road or street. It is generally held, however, in such cases, that the highway is excluded, as these words show such an intention. Certainly the way should be excluded if, in addition to such words, metes and bounds are set forth, showing that such must have been the intention.”
This section should be taken however, in connection with Section 914:
*514 “ It is said by tbe Supreme Court of Connecticut, that ‘ There is no instance where the fee of a highway, as distinct from the adjoining land, was ever retained by the vendor. It can not be presumed that a grantor would part with his interest in the adjoining land and yet retain the fee of the highway subject to the public easement.’ The first statement of the court in the case referred to may not be strictly accurate, but it is undoubtedly true that it is very unusual to attempt to reserve the fee of a highway as distinct from the adjoining land. The general rule is, therefore, well settled that a grant of land bounded upon a highway or river, carries the fee in the highway or river to the center of it, provided the grantor at the time owned to the center, and there be no words or specific description to show a contrary intent. Thus a deed conveying land described therein as bounded ‘by,’ ‘on,’ ‘upon’, or ‘along’ a highway prima facie carries the fee to the center of the highway.”
Therefrom, I think, it may be deduced that it is very unusual and almost unprecedented for a land owner to sell the abutting property, and at the same time retain the fee of the highway, subject to the easement, and that only in a case where there is an affirmative showing that such was the intention of the parties from the instruments and all the circumstances of the case should such a drastic and exceptional situation be recognized. I, therefore, feel that in the light of Keer v. Commissioners, supra.; Atchinson & Topeka R. R. Co. v. Patch, 28 Kansas, 470; Paine v. Storage Co., supra; Holloway v. Southmayd, 139 N. Y., 390; Elliott on Roads and Streets, Sec. 1190, — that the latter authorities recognize the more just rule.
Applying these principles under which those eases, upon these points, are decided, on both sides of the question, the conclusion that I have reached is — that under the Ohio law, a property right which by accretion passed to the owner of the abutting lot, in the absence of any express provision or intention to the contrary, at the time of executing the land contract, must pass to and become the property of the plaintiff under said land contract, as a part of the privileges and appurtenances thereunto belonging. The circumstances surrounding the parties, the very position and situation of the land or' lot, the street, all disclose that the facts surrounding these parties at the time were such as to require *515 that whatever property rights were incidental to and were acquired by the owner of the abutting property, must pass to the grantee and purchaser of the lot known as the Leeper property. Resort need not be had to the declarations of parties at the time and prior to the execution of the land contract; it must be apparent that the owner of the entire tract all about and surrounding the Mistelski lot, — the purchaser in whose interest Miller Avenue was vacated and who had originally donated the land for said street, — it must be apparent, I say, that such a purchaser would have no other intention than to acquire all the property rights of the owner of the 120x60 foot lot, lying, as it did, in the center of its large tract, and adjacent to the vacated street, and the record not disclosing that the seller paid taxes on it or exercised any other affirmative act of ownership over the tract in question, nor do the instruments themselves evidence any other intent than that the grantors intended to pass all property-rights in the land and the privileges and appurtenances thereunto belonging, at the time of executing said land contract, and the language of the conveyance must be construed most strongly against the grantor. White v. Sayre, 2 Ohio, 110; Potter v. Burton, 15 Ohio, 196; Cincinnati v. Newell, 7 O. S., 37.
An interesting point is raised -by the fact that where the street was originally dedicated by one of the abutting owners, while the defendant does not concede that this varies the rule as to the right of an abutter, yet it was held in a well-considered Ohio case, by Judge May, of Cincinnati, that upon vacation of a public street by the city council, the whole of which street wras dedicated out of the property of the predecessors of the abutting property holders on the west side, the abutting property holders on the east side whose grantors contributed no property to the original dedication are entitled to an easement only in the vacated street; the fee of such vacated street, subject to such easement, is in the abutting property holders who are the grantees of the original grantor who dedicated the street. Oberhelman v. Allen, 15 N. P(N.S.), 75; 26 C.C.(N.S.), 305. Ry. v. Shomalter, 57 Kas., 681 is to the same effect; and cases could be added recognizing this doctrine.
*516 Even if the fee in the street does not pass to the grantees, yet the easement having accrued to the abutting property must still adhere thereto, and the abutting lot owner upon the west side of Miller avenue has an easement in the full width of the street for passage to this property, which requires the restraining of the erection of structures therein, and compels the conclusion that Miller avenue must remain open and unobstructed, in order that the easement of these abutting property owners might be exercised.
It is not enough to say that access to the east lot — Mistelslri lot— could be had over some other way or from the property of the plaintiff. The owner of the lot upon the west side of the street had an easement to reach his property from its eastern boundary from all parts of Miller avenue, and Beatty v. Kinnear Mfg. Co., does not reach a situation such as that in which you find these abutting property owners, as the vacation in that case was not contiguous nor adjacent to the tract in question. Mrs Beatty was not an abutting owner in any sense of the word.
From a careful consideration of the facts as disclosed by the records surrounding the question presented, equity requires that an injunction should be issued restraining Elizabeth Mistelsfci and her husband from erecting structures and interfering with the easement of the plaintiff in the premises; and that whatsoever property rights were in Elizabeth Mistelsld and her husband at the time of executing of this land contract, by virtue of its terms passed to the grantee, the Mount Union College, and its title to the premises in question is therefore quieted as against the defendants.