KATE T. RYCKMAN, Respondent, *v.* STEPHEN C. GILLIS, Appellant.

Defendant sold and conveyed by warranty deed to plaintiff's grantor a certain piece of land, reserving the right to enter upon a portion thereof particularly described " at all times thereafter, so long as the clay and sand may last or be used for brick-making purposes," and to dig and take therefrom the clay and sand that may be found thereon fit for brick-making. In digging and removing the clay and sand, within the boundaries of the portion described, some of the adjoining land fell into the excavations. In an action to restrain defendant from removing so much of the soil as was necessary to furnish lateral support to the adjoining land, *held* (JOHNSON, C., dissenting), that the clause was a reservation, not an exception; that defendant was entitled to exercise the rights reserved anywhere within the boundaries of the parcel described; that the doctrine of lateral support, incident to and affecting adjoining lands owned by different proprietors, did not apply; and that plaintiff could not maintain her action.

The authorities, as to adjacent and subjacent support, collated in dissenting opinion, per JOHNSON, C.

(Argued September 29, 1873; decided January term, 1874.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, affirming a judgment in favor of plaintiff entered on the decision of the court at Special Term. (Reported below, 6 Lans., 79.)

This action was brought to restrain the defendant from so removing clay and sand from a piece of land on the bank of the Hudson river, in the town of Cornwall, in Orange county, as to cause land of the plaintiff adjoining it to break away and fall down into the excavation made thereby, and also for an account and payment of damages already sustained.

It appeared that the defendant was, on the 1st day of April, 1865, the owner of about twelve acres of land in the said town of Cornwall, and he conveyed the same to Sarah B. Shutes by a full covenant warranty deed of that date, and containing, immediately after the description of the premises, a clause in the following terms, viz. : " Reserving to the said Stephen C. Gillis, his heirs and assigns, the right at all times hereafter, so long as the clay and sand may last or be used for brick-making purposes, the right to enter upon that part of the aforesaid premises which is bounded and described as follows, to wit : " (Here follows the description by metes and bounds.) " Containing one acre and seventy-five hundredths of an acre of land, and to dig and take therefrom the clay and sand that may be found thereon fit for brick-making. Such clay and sand is to be taken for no other purpose than for brick-making ; and the right to enter upon the aforesaid part of said premises is to be only for the purpose of digging and removing of such clay and sand."

The said Sarah Shutes conveyed to the plaintiff by a full covenant warranty deed the same premises, " subject to the right of Stephen C. Gillis, his heirs and assigns," so reserved to him as above set forth.

The judge who tried the case found, among other things,

that the defendant, after the plaintiff became owner of the premises, had, under the said reservation, been engaged in excavating and removing sand and clay fit for brick-making from the said one and three-quarter acres and had taken away considerable of such materials for such purpose ; that in doing this he had, to some extent, destroyed and removed the lateral support which the soil on the said one and three-quarter acres afforded to the remainder of the plaintiff's land in its natural state, which lies southerly and westerly and next adjoining the ·lands embraced in the said reservation, and that some portion thereof had subsided and fallen into the pits made by the said excavation. He also found that the soil on the said one and three-quarter acres, and on the other part of the said plaintiff's land immediately adjoining thereto is of such nature that said adjoining lands will not stand, but will subside and fall away upon said one and three-quarter acres, unless the same is sustained by an embankment of two feet of base for every one foot of perpendicular thereof.

He then found as conclusions of law :

1st. That the defendant has no lawful right under the aforesaid reservation, to dig or remove the clay and sand that may be found on the said one and three-quarter acres fit for brick-making, so as to destroy the lateral support which the soil thereon affords to the plaintiff's adjoining lands in their natural state or so as to cause the plaintiff's adjoining lands to subside and fall away.

2d. That in exercising the right under the said reservation to excavate and remove clay and sand from the said one and three-quarter acres, the defendant has the right to excavate and remove the same only to such an extent as shall leave the plaintiff sufficient lateral support to sustain her lands adjoining thereto.

He then found and decided that the plaintiff was entitled · to an injunction to secure to her such lateral support, and that she was entitled to recover $1,500 for the damages which she had sustained by the wrongful acts of the defendant, in depriving her of such support.

*Amasa J. Parker* for the appellant. The right reserved by defendant is his deed to plaintiff's grantor affects the whole of the premises. (*Rose* v. *Bunn,* 21 N. Y., 278.) This was the proper function of the reservation. (*Craig* v. *Wells,* 11 N. Y., 315, 321; *Borst* v. *Empire,* 5 id., 38.) The acceptance of the deed containing this reservation created the servitude or easement on the whole premises. (*Rose* v. *Bunn,* 21 N. Y., 278; *Hills* v. *Miller,* 3 Paige, 254; *Child* v. *Chappell,* 5 Seld., 253.) The grant of such a right is an incorporeal hereditament, and carries with it all the means of enjoyment of the right, whatever the consequences. (*Rood* v. *N. Y. & E. R. R. Co.,* 18 Barb., 80; *Radcliff* v. *Mayor, etc., of Brooklyn,* 74 N. Y., 200; Shep. Touch., 89; 9 Metc., 536; *Austin* v. *H. R. R. R. Co.,* 25 N. Y., 338; *Grubb* v. *Guilford,* 4 Watts [Penn.], 223, 246; 6 Exch., 653.) The cases relating to lateral support between contiguous owners and to subjacent support, where the surface is owned by one, and the minerals beneath by another, do not apply here. (*Rowbotham* v. *Willis,* 8 E. & B., 123; *Grubb* v. *Bayard,* 2 Wal. Jr., 81; *Grubb* v. *Guilford,* 4 Watts [Penn.], 223, 246; *Austin* v. *H. R. R. R. Co.,* 25 N. Y., 338; 2 Washb. on R. P., 333, and note 3.) The grant of an easement like that in this case is not revocable. (*Babcock* v. *Utter,* 32 How. Pr., 447.) The covenant of quiet enjoyment in the deed cannot destroy the effect of the reservation. (*Stephens* v. *Baird,* 9 Cow., 274; 2 Pars. on Con., 29, 30.)

*Samuel Hand* for the respondent. The defendant had no right under the reservation to so dig clay or sand as to remove the lateral support of plaintiff's adjoining land. (*Buchanan* v. *Andrew,* L. R. App. Series, July, 1873; Scotch Apps., 290; Shep. Touch., 87; *Farrand* v. *Marshall,* 21 Barb., 410; *Harris* v. *Ryding,* 5 W. & M., 59; *Humphries* v. *Broughton,* 12 Ad. & E., 738; *Smart* v. *Morton,* 5 E. & B., 30; 1 Roll. Abr. Tres., 1 pl., 1; *Panton* v. *Holland,* 17 J. R., 92; *Lasala* v. *Holbrook,* 4 Paige, 169; *Thurston* v. *Hancock,* 12 Mass., 220; *Hay* v. *Cohoes Co.,* 2 Comst., 159; *Richardson*

v. *Cent. R. R. Co.*, 25 Vt., 465; Washb. on Ser., 515, 516, 518, *et seq.* [2d ed.], and cases cited.) Defendant's right to dig and remove sand and clay was not a reservation, but merely an exception of the sand and clay. (*Whitaker* v. *Brown*, 46 Penn. St., 197; *Fancy* v. *Scott*, 2 M. & R., 335; Shep. Touch., 77; 3 Washb. on R. P., 369, 370 [2d ed.].) Evidence of the difference in the value of plaintiff's premises before and after the caving of the bank was proper. (26 Barb., 273; 11 id., 368; 8 Pick., 856.)

LOTT, Ch. C.  The question presented for our decision on this appeal is whether the defendant, in the exercise of the right, reserved to him in and by his deed to Mrs. Shutes, to enter upon a certain and specific portion of the land granted to her and "to dig and take therefrom the clay and sand that may be found thereon fit for brick-making" without any restriction or qualification in the terms of the reservation, can, as decided by the courts below, excavate and remove the same "only to such an extent as shall leave the plaintiff sufficient lateral support to sustain her lands adjoining thereto." Such is not a proper construction of the reservation.  The defendant in his grant conveyed to his grantee the title to the whole of the land included in the general description thereof. There was no *exception* from its operation of the one and three-quarters of an acre specifically described and designated in the reserving clause of the deed, but the tenure thereof was only *abridged* to the extent of the right mentioned and specified in that clause.  The legal effect of the deed was the same as if the entire property, without the reserving clause, had been absolutely conveyed to Mrs. Shutes, and she had immediately granted to the defendant the same right as was reserved to him thereby.  There was consequently no severance of the ownership of the land described therein from the residue of the premises granted.  The whole became vested in Mrs. Shutes, and was afterward conveyed by her to the plaintiff subject only to the rights of the defendant secured to him by the reservation.  The plaintiff and defendant were, there-

fore, not contiguous owners of different pieces of land. The plaintiff alone was owner in fee of the entire property described in the deed to her, while the defendant had only an incorporeal right to excavate such reserved clay and sand fit for brick-making in the one and three-quarter acres, specifically described to define the extent of the land in which that right could be exercised. It follows, that the doctrine of lateral support and other rights incident to, and affecting lands adjoining and adjacent to each other, owned by different proprietors, has no application in this case.

The opinions of the courts below, both at Special Term and the General Terms, show that they based their decisions on the assumption that, as to the clay and sand, the defendant occupied the position of an adjoining proprietor to the plaintiff, and was subject to the rule of the common law, that every person must so use his own property as not to do any damage to that of another. They were mistaken as to the nature and character of the defendant's right. As I have before shown, the freehold in the one and three-quarters of an acre, was in the plaintiff. It was not divided so as to vest the title to the clay and sand thereon in the defendant absolutely, as a distinct and separate freehold, the plaintiff having the title to the residue. The defendant was the owner only of an incorporeal right to dig for and take away the clay and sand found within the boundaries of the land to which the right extended for the sole purpose of brick-making, and not the absolute proprietor thereof for all purposes. The ownership of mineral lands is distinguishable from that in this case. In those the surface and the subjacent mines may be, and often are, owned by different parties and by separate titles, the division being by a horizontal line. There is a distinct freehold in each of them, and the subjacent lands or mineral strata must be so occupied and used as not to divest or interfere with a reasonable and proper support of the surface lands. Such are the cases cited by the respondent's counsel, of *Harris* v. *Ryding* (5 M. & W., 59); *Humphries* v. *Brogden* (12 Ad. & Ell. [N. R.], 739; *Smart* v. *Morton* (5 Ell. & Bl., 30); and

the case in the House of Lords of *Buchanan* v. *Andrews* (Law R., Appellate Series, Scotch Appeals, 2d July 1873, vol. 2, p. 290). The rights of the mineral owners were considered as freehold estates and not as mere reservations of a right to dig for ores in the land of another.

Assuming, then, that the right of lateral support is not incident to the plaintiff's ownership of the lands outside of the one and three-quarter acres, it remains to be considered whether, under a proper and reasonable construction of the defendant's right, as granted or reserved to him as above stated, he can exercise it within the boundaries of the land described in the reservation to such an extent only as shall leave the plaintiff lateral support to sustain her lands adjoining thereto. There is no express restriction to that effect in the terms of the grant itself, and I find nothing in the deed from which a restriction to that effect can be inferred. The defendant, it must be borne in mind, was the owner of the entire twelve acres, when he conveyed the same to Mrs. Shutes. He had been previously engaged in the manufacturing of brick, and for that purpose had removed from time to time, such clay and sand, as were required by him. He knew, and his grantee must be assumed to have known, not only that there was a quantity of both clay and sand fit for brick-making, but also that the natural and inevitable effect of digging it out and removing it from the land in which it was imbedded, was to cause the adjoining land more or less to break off and fall into the pit caused by such digging and removal. With such knowledge, the parties agree that the defendant may, notwithstanding his grant of the entire twelve acres, enter upon a specific portion thereof, clearly defined by distinct and unmistakable monuments, "to dig and take away therefrom, the clay and sand that may be found thereon fit for brick-making," at all times thereafter " so long as the clay and sand may last or be used for brick-making purpose." There is no limitation to or a qualification of that right prescribed or declared, nor is there anything in the deed to indicate an intention to. limit or restrict it. On

the contrary, the fair and reasonable inference, from the particular designation of the land on which it was to be exercised, is that it was to extend to the whole thereof irrespective of its effect on the adjoining property, and that the defendant's grantee being fully aware and cognizant of the injury that might naturally and reasonably be expected to result from its exercise, was willing to bear the loss occasioned thereby. At all events the defendant as owner, about to part with the title to the entire property, was at liberty to prescribe the terms and conditions on which he would do it; and his grantee, by acceding to his requirement in that respect, was bound thereby and must now abide by the consequences resulting therefrom. The intention of the parties is carried out by a *reservation* of the right, and that form of securing it was, I think, adopted with the intent of relieving the land designated for its exercise, from the burden of supporting that adjoining thereto, to which an *exception* of the land itself from the grant would have subjected it. It is proper to assume that the price paid for the land was fixed with · reference to the nature, extent and effect of the right reserved to the defendant, and if the contract, deliberately entered into, was improvident on the part of either party, that fact cannot alter or affect its construction. There is no ambiguity in the terms of the reservation and there is no reason to believe that the defendant's grantee did not fully understand them or what was its effect on the grant made to her.

It was said by the learned judge who delivered the opinion of the court at General Term, that the deed in question contained a covenant for the quiet enjoyment of the land granted, apparently for the purpose of raising an inference that the right to dig for the clay and soil, so as to affect the adjoining lands, could not have been intended. Such a construction cannot properly be given to that covenant. It applies to the enjoyment of the property conveyed, as qualified or restricted by the reservation and cannot impair or affect the extent of the right reserved.

Entertaining the above views of the plaintiff's rights, my

conclusion is that the judgment rendered by the court at Special Term, and the affirmance thereof by the General Term, were both erroneous. They must, therefore, be reversed and a new trial ordered, costs to abide the event.

Johnson, C. (dissenting). The plaintiff takes her title to the house and land, injuriously affected by the acts of the defendant, under a deed granting about twelve acres of land in a single piece and which declares the conveyance to her to be "subject to the right of Stephen C. Gillis, his heirs and assigns, at all times thereafter, so long as the clay or sand may last or be used for brick-making purposes, to enter upon that part of the aforesaid premises which is bounded and described as follows (giving metes and bounds): containing one acre and seventy-five one hundredths of an acre of land, and to dig and take therefrom the clay and sand that may be found thereon fit for brick-making; such clay and sand is to be taken for no other purpose than for brick-making, and the right to enter upon the aforesaid part of said premises is to be only for the purpose of digging and removing such clay and sand." The grantor of the plaintiff took his title by deed from the defendant. In that deed the same twelve acres are described by the same description, and this is followed by a clause in terms "reserving to the said Stephen C. Gillis, his heirs and assigns" the same right to which the plaintiff's conveyance is declared subject and expressed otherwise in the same words. The acre and three-quarters to which the reservation relates appears from its description to be at the south-easterly corner of the twelve acres and its two exterior lines inclosing that corner are in the exterior bounds of the twelve acres. On the other two sides it adjoins the residue of the twelve acres. The injury complained of has been produced by the defendant in removing sand and clay fit for brick-making, and which he has employed for that purpose, from the acre and three-quarters specified in the deeds. All the excavation has been made within those bounds, but the consequence has been that the land of the plaintiff, beyond the bounds of the acre and three

quarters, has cracked and fallen in upon the acre and three-quarters, for want of that lateral support which it received while the whole was in a state of nature, from the soil of the acre and three-quarters. Upon these facts it has been adjudged in the Supreme Court that the acts of the defendant were wrongful and he has been enjoined from continuing them.

The general doctrine that where the lands of two owners adjoin upon the surface, each owner has a right that his land shall not be deprived of the support which it derived from the adjoining land in its natural condition has become firmly established in the law of England and of this country. Apparently questioned in the opinion of Judge BRONSON in *Radcliff's Executor* v. *Brooklyn* (4 Comst., 200) where the point was not in judgment it has, nevertheless, after a very full and able discussion in *Farrand* v. *Marshall* (21 Barb., 410), been adhered to and seems not to have been denied since the first reported statement of it in 2 Rolle's Ab., 565, by any reported judgment. In England it has served as the foundation of a much wider doctrine relating to the right of support between owners of the surface and ·of mines underneath, and has become perfectly established as law and as consonant to natural justice. Among the numerous cases sustaining these views I may refer to *Humphries* v. *Brogden* (12 Q. B., 739 [Ad. & El.]); *Smart* v. *Morton* (5 Ell. & Bl., 309); *Rowbotham* v. *Wilson* (8 Ell. & Bl., 123, and 8 H. L. Cas., 348); *Backhouse* v. *Bonomi* (9 H. L. Cas., 503); *Caledonian Railway Co.* v. *Sprot* (2 MacQueen, 449). The text books likewise concur in the same doctrine and refer to and comment upon very numerous cases in its support and illustration. (Washburn on Easements [2d edition], 511, and following, and 558 and following.)

It is further established that the right of support between adjoining or adjacent proprietors is a natural incident to the ownership of land, and is in that respect distinguishable from an easement, which must have its origin in a grant, either actual, or presumed from continued enjoyment. This is

established by the consideration that the right at once exists upon the creation of separate ownerships in land adjoining, either laterally or horizontally, and needs no grant nor continuance to give it effect as a right. In *Humphries* v. *Brogden*, before cited, Lord CAMPBELL says: " This right to lateral support from adjoining soil is not like the support of one building upon another, supposed to be gained by grant, but it is a right of property passing with the soil. If the owner of two adjoining closes conveys away one of them the alienee, without any grant for that purpose, is entitled to the lateral support of the other close, the very instant when the conveyance is executed as much as after the expiration of twenty years."

But if the right to have support from adjoining land be not an easement, then what may be called the antagonistic right of removing your own soil so as to to diminish the support to which the adjoining owner was entitled, is an easement affecting his land in favor of yours, and making his land the servient tenement in that regard, and subject to the easement of being deprived of its natural support. That such an easement may be acquired by grant or agreement of the parties is obvious, and has been settled by repeated adjudications between surface owners and mine owners underneath. *Rowbotham* v. *Wilson* and *Smart* v. *Morton* are instances establishing further, that the party claiming the ordinary rule not to be applicable must establish its renunciation by the other party. In the latter case (5 El. & Bl., 45), Lord CAMPBELL says: " The rights and obligations of parties, when the surface of land belongs to one owner and the minerals under it belong to another, appear to be well settled by the two cases of *Harris* v. *Ryding* (5 M. & W., 60) and *Humphries* v. *Brogden*. *Prima facie*, the owner of the surface is entitled to support from the subjacent strata; and if the owner of the minerals works them it is his duty to leave sufficient support for the surface in its natural state. But the *prima facie* rights and obligations of the owner of the surface and of the minerals may be varied by the production of title deeds, or by other

evidence.  *  *  Upon the severance of the surface and the minerals, a deed might be framed empowering the owner of the minerals to remove the whole of them, without leaving a support for the surface.  *  *  It may be contended that the powers here reserved, of working and winning the coals, are not confined to such as are to be exercised on the surface; but wherever exercised, they are perfectly consistent with the exercise of them, being subject to the implied right of the owner of the surface to support from the minerals. If the owner of a house were to convey it to another by deed, reserving the lower story to himself, whatever powers he reserved for the enjoyment of this story, unless the right of support is renounced by the grantee of the superior stories, these powers must be considered as only meant to be exercised subject to this right being respected." In the other case cited, *Rowbotham* v. *Wilson* (6 El. & Bl., 602), the right of the owner of the minerals to injure the surface in extracting them was supported, not on any distinction between an ownership of the minerals and a mere easement to get them, but upon the ground that his right was supported by agreement at its origin, binding on the surface owner, by which he was precluded from any claim for damage for injury to the surface, by its sinking or other impairment, through the operations of mining; and the Court of Exchequer Chamber affirmed the judgment substantially on the same ground. (92 Eng. Com. Law., 123, 151.) In the House of Lords, where both judgments were affirmed, Lord Wensleydale said (8 H. L. Ca., p. 362): I do not feel any doubt that this was the proper subject of a grant, as it affected the land of the grantor; it was a grant of a right to disturb the soil from below and to alter the position of the surface, and is analogous to the grant of a right to damage the surface by a way over it. The same doctrines are held and enforced in the judgment of Lord Selborne, in the House of Lords, in the very recent case of *Buchanan* v. *Andrews* (L. R. [2 Scotch Appeals], 290), where he declares that a reservation of minerals, with full power to work and carry away expressed in the largest terms

and effectual to reserve the whole property, would still have been subject to the general restriction that binds every owner of property so to use his own as not to injure another's rights or property, but for an affirmative provision altering the ordinary rule.

Upon the whole, it seems to be clear that of common right no owner of land may deprive another adjoining owner's lands, in their natural condition, of lateral support, without the assent or grant of the owner whose lands are to be affected by such deprivation. In the case now before us, if the reservation to the defendant were of the whole acre and three-quarters of land, then it would be plain that under the authorities already considered, he could not have carried on the excavation of the soil to an extent sufficient to injure the soil of the plaintiff, by depriving it of its natural support, without incurring a liability therefor. It is insisted, on the part of the defendant, that inasmuch as it is not the ownership of the one and three-quarter acres which *is* reserved, but only of the right to get sand and clay for brick-making, that the principles before discussed become inapplicable. Taking the reservation by the defendant to be equivalent to a grant in the same terms from the plaintiff — and that is the aspect most favorable to the defendant — I think it impossible to maintain that a larger right passes by the right to dig within certain bounds than by the *grant of the land* in the same bounds. All particular rights must be less than the full dominion of the land. The sense of the rule requires us to reject such a distinction. The rule expresses the legal consequence of two adjoining pieces of land being subject to separate ownerships. It is the separation of ownerships, and not their extent or quality in point of estate, that is material. From the separation of ownership rights result *in respect to support,* not from the greater or less interests of the separate owners. The right claimed on the part of the defendant is made up of two distinct elements: a right to dig within the prescribed bounds and a right to deprive of support the adjoining ground beyond the bounds. The grant does not profess to give both.

It only expresses the right to dig. The cases before cited show that the right to dig, given with the property in the thing to be got out, would fail to carry the right to disturb the adjoining ground. It must, in analogy to those cases, be limited to such digging as can be done without injury to the land of the plaintiff, beyond the prescribed bounds. The fact that the plaintiff has other lands adjoining is not material to the construction of the grant. The words of the grant go only up to the specified boundary, and may not be expounded to go beyond by implication. They must receive the same construction as if she had made the grant, owning only the one and three-quarter acres, since they can thus have all the significance and force which belongs to them. The defendant asks that they be interpreted in view of the fact that the plaintiff owned the adjoining land, and might have given a right to be exercised over that as well as over the specified parcel. The conclusive answer is, that according to the cases before cited, that right, to affect other land than that specified, is required to be expressed.

The judgment should be affirmed.

All concur with LOTT, Ch. C., except JOHNSON, C., dissenting.

Judgment reversed.