bring action against the state or against the comptroller representing the state; therefore the party against whom the statute was running was given his day in court, and chapter 448 of the Laws of 1885 contains the statute of limitations applicable. This action was begun after the time limited.

The plaintiff, however, urges that, although the statute had run under the law of 1885, the law of 1896 nullified the limitation in said act of 1885 and gave further time to a plaintiff within which he could prosecute his action of ejectment. I do not think that this was the intent of the Legislature in passing that section 132 of chapter 908 of the Laws of 1896. It cannot be presumed that the Legislature had intended to revive an action which had already become barred by the statute. If the parties had time and opportunity to appear in court and the statute had run against them, the limitation was conclusive; the act of 1896 applied only to those cases against which the statute had not run and in which the parties had not had opportunity to seek redress in the courts, because the notice had not been published or for other reasons. McDougall v. State, 109 N. Y. 73, 16 N. E. 78; Gates v. State, 128 N. Y. 221, 227, 229, 28 N. E. 373; People v. Morgan, 45 App. Div. 19, 24, 60 N. Y. Supp. 898. Plaintiff's action to recover an undivided interest in lot 340 I hold, therefore, to be barred by the statute of limitations in chapter 448 of the Laws of 1885.

There is no conflict between this holding and the holding made in People v. Golding, 55 Misc. Rep. 425, 106 N. Y. Supp. 821, because in that case there was no proof of publication of notice of possession in the comptroller.

Findings and a decision may be prepared accordingly.

Ordered accordingly.

---

PEOPLE ex rel. BRYAN et al. v. STATE BOARD OF TAX COM'RS.

(Supreme Court, Appellate Division, First Department. February 10, 1911.)

1. TAXATION (§ 144*)—CORPORATION FRANCHISES AND PRIVILEGES—CONSTRUCTION OF TUNNEL—"SPECIAL FRANCHISE."

The New York & Long Island Railroad Company was incorporated in 1887 and obtained the consent of the then city of New York for the construction of a tunnel railroad under one of the streets of the borough of Manhattan, and the time for construction was extended to 1907, at which time the company's corporate existence expired under the provisions of section 5 of the railroad law (Laws 1890, c. 565, amended by Laws 1901, c. 508), and its property became vested in the relators, who were its directors at that date, as trustees for stockholders and creditors in accordance with section 35 of the general corporation law (Consol. Laws, c. 23). The state in 1891, by patent, granted to the company and its successors a right of way to construct a tunnel under the waters of the East River with all "the rights, hereditaments and appurtenances" belonging and appertaining thereto, to have and to hold forever. Tax Law, Laws 1896, c. 908, § 2, subd. 3, as amended by Laws 1899, c. 712 (Consol. Laws, c. 60, art. 1, § 2, subd. 3), provides that the terms "land, real estate and real property" shall include underground railroads, including the value of all franchises to construct and operate the same, to be known as special franchises and to include the value of the tangible

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

property of a corporation, situated under any public waters. In 1908 and 1909 the State Board of Tax Commissioners assessed the company's special franchise to the relators. *Held*, that while the patent was not an absolute conveyance of land, or a fee, that part of the tunnel beneath the bed of the river extending from a point 300 feet east of the bulk-head line of the Manhattan shore was property subject to taxation as a "special franchise" under the tax law.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 250; Dec. Dig. § 144.*

For other definitions, see Words and Phrases, vol. 7, p. 6576.]

2. NAVIGABLE WATERS (§ 36*)—LANDS UNDER WATER—OWNERSHIP BY STATE—TIDEWAY.

The state holds the title in fee in the tideway and to the lands under water in East River beyond the tideway as trustee for the public.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 180–200; Dec. Dig. § 36.*]

Laughlin, J., dissenting.

Appeal from Special Term, New York County.

Certiorari by the People of the State of New York, on the relation of E. P. Bryan and others, as trustees of the New York & Long Island Railroad Company, against the State Board of Tax Commissioners. From final orders in proceedings to review assessments for 1908 and 1909, respectively, made by the State Board of Tax Commissioners upon the special franchise of the relators in the borough of Manhattan, City of New York (67 Misc. Rep. 508, 124 N. Y. Supp. 711), the relators appeal. Affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

James L. Quackenbush (Ralph Norton, of counsel, and Charles F. Kingsley, on the brief), for relators.

Edward R. O'Malley, Atty. Gen. (William N. Cohen, of counsel, and Arthur J. Cohen, on the brief), for respondent.

CLARKE, J. The New York & Long Island Railroad Company was duly incorporated on or about the 30th day of July, 1887, and duly acquired the consent of the board of aldermen of the then city of New York for the construction, operation, and maintenance of a tunnel railroad in, through, and under the surface of Forty-Second street from its easterly end to a point therein between Tenth and Eleventh avenues in said city, and such tunnel has been actually constructed from the easterly end of Forty-Second street to a point at or near its intersection with Park avenue. The tunnel extends between the bed of the East River to certain designated points in Long Island City.

The time of the railroad company to complete the construction of its railroad was extended by various acts of the Legislature until the 1st of January, 1907, when, by reason of the failure of the company to complete its road, its corporate existence expired in accordance with the provisions of section 5 of the railroad law (Laws 1890, c. 565, amended by Laws 1901, c. 508), and all its property, franchises, and rights became vested in the individuals who were on that date

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

its directors, as trustees for the benefit of stockholders and creditors of the corporation in accordance with the provisions of section 35 of the general corporation law (Consol. Laws, c. 23). The relators were on the 1st of January, 1907, the directors of said company, and they became the trustees of its property under the statutory provisions referred to.

The geographical limits of the borough of Manhattan extend to the bulkhead line of the Queens county shore, thus including the bed of the East River. The state board of tax commissioners levied an assessment of $3,175,000 upon the special franchises of the relators in the borough of Manhattan, city of New York, for the year 1908, and of $3,350,000 upon said franchises for the year 1909, which assessments having been affirmed upon certiorari proceedings by the Special Term, from the orders entered thereon this appeal is taken.

It was stipulated between counsel that, if the court should hold that the entire tunnel in the borough of Manhattan was properly assessable by the State Board of Tax Commissioners as a special franchise, then the existing assessments for 1908 and 1909 respectively might be regarded as the equalized valuations for the purpose of taxation. Therefore the sole point presented to this court is whether so much of the tunnel beneath the bed of the river as extends from a point 300 feet east of the bulkhead line of the Manhattan shore to the bulkhead line of the Queens shore is legally subject to taxation.

On the 5th of January, 1891, a patent was issued by the state to the company, reading as follows:

"Know ye, that pursuant to chapter 140 of the Laws of 1850, as amended by chapter 601, Laws of 1886, and a resolution of the commissioners of the land office adopted November 5, 1890, we have given and granted and by these presents do give and grant unto the New York & Long Island Railroad Company, its successors and assigns, a right of way 99 feet in width and 50 feet in height within which to construct a tunnel for the use and operation of the above grantee's railroad beneath the waters of the East River, upon and along the route of said railroad between the city of New York and Hunter's point in Long Island City, as shown in plan and profile upon the charts filed in the office of our Secretary of State, with the water grant papers of the month of January, 1891, together with all and singular the rights, hereditaments and appurtenances to the same belonging or in any wise appertaining, to have and to hold the above-described premises unto the said New York & Long Island Railroad Company, its successors and assigns forever."

The consideration paid by the New York & Long Island Railroad Company for such grant was $575.

The relators contend that the portion of their tunnel under the river between the points above indicated is built entirely within their own property, and therefore is not subject to an assessment such as is under review here; in other words, that the patent is an absolute conveyance of real estate.

Subdivision 3 of section 2 of the tax law (chapter 908 of the Laws of 1896, as amended by chapter 712 of the Laws of 1899 [Consol. Laws, c. 60, art. 1, § 2, subd. 3]), provides:

"The terms, land, real estate, and real property as used in this chapter include * * * all surface, underground or elevated railroads, including

the value of all franchises, rights or permission to construct, maintain or operate the same, in, under, above, on or through streets, highways or public places, all railroad structures, substructures and superstructures, tracks and the iron thereon, branches, switches and other fixtures permitted or authorized to be made, laid or placed in, upon, above or under any public or private road, street or ground. * * * A franchise, right, authority or permission specified in this subdivision shall, for the purpose of taxation, be known as a special franchise. A special franchise shall be deemed to include the value of the tangible property of a person, copartnership, association or corporation situated upon, under or above any street, highway, public place or public waters in connection with the special franchise. The tangible property so included shall be taxed as a part of the special franchise."

It seems to us that the contention of the relators is unsound. The intention of the Legislature in providing this source of revenue was to subject to taxation those making use of public property in the prosecution of their business. If a railroad be located in, upon, or under a public street, in accordance with the necessary permission granted by the proper authorities, it has a property right within the usual and common signification of that word as held in People v. O'Brien, 111 N. Y. 1, 18 N. E. 692, 2 L.·R. A. 255, 7 Am. St. Rep. 684. The court said:

"The title to streets in New York is vested in the city in trust for the people of the state, but under the Constitution and statutes it had authority to convey such title as was necessary for the purpose, to corporations desiring to acquire the same for use as a street railroad. * * * Grants similar in all material respects to the one in question have heretofore been before the courts of this state for construction, and it has been quite uniformly held that they vest the grantee with an interest in the street in perpetuity, for the purposes of a street railroad."

The land under water in the East River is held by the state. The Court of Appeals said, in Matter of City of New York, 168 N. Y. 134, 61 N. E. 158, 56 L. R. A. 500:

"The state holds the title in fee in the tideway and to the lands under water beyond the same, as trustees for the public in its organized capacity."

It has granted through this land so held in fee a right of way to construct a tunnel for the use and operation of the grantee's railroad. While the patent contains words of perpetuity, they do not transform the precise right of way granted into a fee by implication. No one would contend that the perpetuity held to attach to the permission to construct a railroad in the public streets constitutes a fee rather than a right of way.

Relator's road is situated under public waters, and therefore comes within the express terms of the tax law cited.

We have no doubt that the tunnel under the river was properly taken into consideration by the board in assessing the special franchise of relators for purposes of taxation, and it follows, therefore, that the orders appealed from should be affirmed, with costs and disbursements to the respondent.

INGRAHAM, P. J., and SCOTT and MILLER, JJ., concur.

LAUGHLIN, J. (dissenting). The State Board of Tax Commissioners fixed the valuation of special franchises of the relator in the

borough of Manhattan, New York, as $3,175,000 for the purposes of taxation for the year 1908 and as $3,350,000 for like purposes for the year 1909, and this proceeding has been instituted to review those assessments. Both assessments were affirmed, as made at Special Term. One special franchise included in the assessments was granted to the New York & Long Island Railroad Company by the board of aldermen of the city of New York on the 23d day of December, 1890, and approved by the mayor on the 31st day of the same month. It conferred the right to construct a tunnel under the surface of Forty-Second street from the East River westerly to a point between Tenth and Eleventh avenues for a double-track railroad in accordance with plans and a profile heretofore presented to said board.

Another alleged special franchise included in the assessments is a right of way and tunnel for the use and operation of the railroad constructed under the East River from the easterly end of Forty-Second street to the bulkhead line of the shore of Queens county; that being the boundary line of the borough of Manhattan. This right of way was granted by, and the tunnel was constructed under, letters patent from the state duly granted on the 5th day of January, 1891, pursuant to the provisions of chapter 140 of the Laws of 1850, as amended by chapter 601 of the Laws of 1886, and a resolution of the commissioners of the land office adopted on the 25th day of November, 1890. The letters patent contain the recital that the people of the state of New York "have given and granted, and by these presents do give and grant unto the New York & Long Island Railroad Company, its successors and assigns, a right of way ninety-nine feet in width and fifty feet in heighth, within which to construct a tunnel for the use and operation of above-named grantees' railroad beneath the waters of the East River upon and along the route of said railroad between the city of New York and Hunter's Point in Long Island City as shown in plan and profile, upon the charts filed in the office of our Secretary of State with the water grant papers of the month of January, 1891. Together with all and singular the rights, hereditaments and appurtenances to the same belonging or in any wise appertaining. To have and to hold the above-described premises unto the said the New York & Long Island Railroad Company, its successors and assigns forever."

The question presented by the appeal is whether the right of way, tunnel, and railroad construction therein under the letters patent constitute a special franchise within the provisions of section 2 of the tax law, which, so far as material to the question presented for review, are as follows:

"The terms 'land,' 'real estate,' and 'real property,' as used in this chapter, include the land itself above and under water, all buildings and other articles and structures, substructures ard superstructures, erected upon, under or above, or affixed to the same; * * * all surface, underground or elevated railroads, including the value of all franchises, rights or permission to construct, maintain or operate the same in, under, above, on or through, streets, highways, or public places; all railroad structures, substructures, and superstructures, tracks and the iron thereon; branches, switches and other fixtures permitted or authorized to be made, laid or placed in, upon, above or under any public or private road, street or ground; * * * a franchise, right, authority or permission specified shall for the purpose of

taxation be known as a 'specified franchise.' A special franchise shall be deemed to include the value of the tangible property of a person, copartnership, association or corporation situated in, upon, under or above any street, highway, public place or public waters in connection with the special franchise. The tangible property so included shall be taxed as a part of the special franchise."

The parties have stipulated the equalized valuation of the assessable special franchise of the relators for the years 1908 and 1909 in the event that it is decided that the right of way tunnel and railroad constructed under the letters patent are assessable as a special franchise. They have also stipulated the value of the tangible property constructed under the grant from the board of aldermen for those years; but they have not stipulated the value of the intangible franchise granted by the board of aldermen in connection with the tangible property, and, therefore, if it be decided that the right of way, tunnel and railroad constructed under the letters patent are not assessable as a special franchise, the matter will necessarily have to be remitted to the Special Term for further proceedings.

I am of opinion that the right of way, tunnel, and railroad constructed under the letters patent are not a special franchise within the contemplation of the provisions of section 2 of the tax law herein quoted.

By the common law of England the title to land under the public navigable waters was vested in the Crown, and it was regarded as jus privatum and was alienable by the Crown subject to the dominion and control of Parliament over the land and water in the interests of navigation and commerce which was deemed jus publicum; and the state of New York succeeded to all the rights of both the Crown and Parliament subject to the authority delegated to Congress by the federal Constitution to regulate and control navigation in the interests of commerce with foreign nations and between the states. Langdon v. Mayor, 93 N. Y. 129, 154, et seq.; Ill. Rd. Co. v. Illinois, 146 U. S. 387, 13 Sup. Ct. 110, 36 L. Ed. 1018; Saunders v. N. Y. C. & H. R. R. Co., 144 N. Y. 75, 38 N. E. 992, 26 L. R. A. 378, 43 Am. St. Rep. 729. It was competent for the Legislature to grant to an individual or to a corporation "for public or for such other purposes as it deemed for the best interest of the state" the title of the people of the state to lands under navigable waters or to an irrevocable easement therein, and when once duly granted the land or easement therein cannot be appropriated for public use without just compensation. Langdon v. Mayor, supra; Saunders v. N. Y. C. & H. R. R. Co., supra; N. Y. C. & H. R. R. Co. v. Aldridge, 135 N. Y. 83, 32 N. E. 50, 17 L. R. A. 516. It was likewise competent for the Legislature to authorize a railroad corporation to acquire by eminent domain proceedings lands owned by the state or by others even though devoted to or held for other public purposes. Matter of Mayor, etc., of New York, 135 N. Y. 253, 31 N. E. 1043, 31 Am. St. Rep. 825. The Legislature determined that it was for the public interests to authorize domestic railroad corporations to acquire such lands, and it accordingly conferred authority upon the Land Commissioners to make grants thereof to railroads upon such

terms as might be agreed upon; and it also empowered the railroad companies to acquire lands owned by the state by condemnation proceedings the same as they were authorized to acquire the lands of individuals necessary for the purposes of their incorporation, and it further empowered the officers of counties and of towns having charge of lands owned by counties and towns which were required by railroads to grant the same to railroads for such compensation as might be agreed upon. Chapter 140, Laws 1850, sections 25 and 49, now section 8, Railroad Law; Saunders v. N. Y. C. & H. R. R. Co., supra.

The commissioners of the Land Office were therefore expressly authorized to grant to the relator, and, in the event of the failure of negotiations with said board, the relator was authorized to acquire by condemnation the same interest in the land under the East River owned by the state as it might have acquired by purchase or condemnation from an individual. Rumsey v. N. Y. & N. E. R. Co., 130 N. Y. 88, 28 N. E. 763. The terms of the letters patent are sufficiently broad to convey a fee limited to the use specified, and there is no apparent reason for an intention on the part of the land board not to convey the entire right, title, and interest of the estate in the premises described, leaving only, at most, a reversionary interest in the state in the event of the abandonment of the use of the premises for railroad purposes. The title which the Legislature authorizes to be granted or acquired depends upon the legislative intent as shown by the statute. Sweet v. Buffalo, N. Y. & P. R. Co., 79 N. Y. 293; Beal v. N. Y. C. & H. R. R. Co., 41 Hun, 172, affirmed 119 N. Y. 635, 23 N. E. 1148. It appears by the adjudicated cases (see Saunders v. N. Y. C. & H. R. R. Co., supra; N. Y. C. & H. R. R. Co. v. Aldridge, supra; and Sage v. Mayor, 154 N. Y. 61, 47 N. E. 1096, 38 L. R. A. 606, 61 Am. St. Rep. 592) and by the various special acts of the Legislature that the fee to such public lands has frequently been granted to railroads and to municipal corporations and to owners of the uplands. The use of the words "right of way" in the letters patent do not show an intent to grant merely an easement. The lands acquired by a railroad company by purchase or condemnation for the construction of its railroad are commonly designated as its right of way, and they are so referred to in the railroad law. Railroad Law, § 7, subd. 4; Western Union Tel. Co. v. Pennsylvania R. Co., 195 U. S. 540, 570, 25 Sup. Ct. 133, 49 L. Ed. 312; Joy v. St. Louis, 138 U. S. 1, 11 Sup. Ct. 243, 34 L. Ed. 843.

The railroad company was authorized to acquire by private grant or purchase the fee to lands necessary for its use. Nicoll v. N. Y. & Erie R. Co., 12 N. Y. 121. The title usually acquired by condemnation proceedings, although not a fee simple absolute, is technically designated and described as a base or terminable fee. Saunders Case, supra; Beal Case, supra; People ex rel. W. U. Tel. Co. v. Dolan et al., 126 N. Y. 166–178, 179, 27 N. E. 269, 12 L. R. A. 251. See subsection 4, § 7 of Railroad Law. The interest acquired is greater than a right of passage, is more than an easement, is special and exclusive, and has the substantiality of a fee, and becomes

the private property of the railroad corporation.  Western Union Tel. Co. v. Pennsylvania R. Co., supra.  The reversionary interest remaining in the former owner, if any, is never taxed or deemed of any substantial present market value; and ordinarily, at least, the full value of the land is awarded.  South Buffalo Ry. Co. v. Kirkover, 176 N. Y. 301, 68 N. E. 366.  The title acquired by a city for street purposes, although subject to private easements and limited to public use for that particular purpose, is commonly designated a fee.  See Story v. Elev. R. Co., 90 N. Y. 122, 43 Am. Rep. 146.  The title acquired under the letters patent is not affected by the fact that the grant was of land below the surface of the earth.  N. J. Zinc Co. v. New Jersey, 13 N. J. Eq. 332; Va. Coal & Iron Co. v. Kelly, 93 Va. 332, 24 S. E. 1020; Ryckman v. Gillis, 57 N. Y. 68, 15 Am. Rep. 464; 20 Am. & Eng. Ency. Law, 771.  See, also, section 16, Railroad Law.

The franchise which the railroad acquired by its charter and by filing the maps and profiles of its route gave it, so far as concerned the public, a license to construct and operate its railroad on the route in question along or over the public lands of the state; and it could have crossed the East River without obtaining the consent, even, of the Commissioners of the Land Office.  Section 4, subd. 4, and sections 6, 11, and 16, Railroad Law; N. Y. C. & H. R. R. Co. v. Aldridge, supra.  With respect to these portions of this route which were upon, over, and under public streets, highways, and places under the jurisdiction and control of local authorities, its franchise was not complete without the consent of such local authorities which was required by the Legislature (sections 11 and 16 of the Railroad Law); but with respect to the private lands of the state, not in use for public purposes, it needed no further franchise from the state (N. Y. C. & H. R. R. Co. v. Aldridge, supra), and the land board was not authorized to grant it a franchise.  If the lands under the river had been previously conveyed by the state and were owned by individual owners of the upland, the relator might have acquired the same by private grant or by condemnation, and in such case it could not be maintained that it thus acquired a franchise of any nature.  Moreover, the Commissioners of the Land Office were only authorized to represent the state with respect to its proprietary ownership of lands and were not clothed with any of the sovereign power to grant franchises.  The special franchise tax law relates to licenses, permits, and grants of public property rights, as distinguished from rights in private property even though owned by the state.  The "public franchises" to which the special franchise tax law relates are subject to control and regulation in the interests of the public (People ex rel. N. Y. C., etc., Co., v. Gourley, 198 N. Y. 486–492, 92 N. E. 398), and in granting the same compensation may be exacted and conditions may be imposed with respect to regulations in the interests of the public (Binninger v. City of New York, 177 N. Y. 199, 69 N. E. 390; City of Buffalo v. D. L. & W. R. Co., 136 App. Div. 274, 120 N. Y. Supp 1081, and cases cited).

Here I think there remained no right to invade or to interfere with this tunnel without making just compensation.  The earth

127 N.Y.S.—55

and minerals found in the premises described in and covered by the grant became, I think, the property of the relator. If thereafter it should be desired in the interest of some public improvement to change the location of this tunnel or to otherwise use the place occupied by it, I think that could not be compelled without making just compensation to the relator. A street or steam railroad may be required at its own expense at any time in the interest of the public to change the location of its track in, upon, over, or under a public street or highway or crossing. That makes an important distinction between the character of rights or grants that the Legislature intended to designate special franchises and private grants of part of the right of way even though through public lands not held or needed for public use. In the one case the use is of public grounds together with the public, and in the other of private premises exclusive of the public. The special franchise tax law was grafted onto the general tax law by chapter 712, Laws 1899, which was entitled "An act to amend the tax law with relation to the taxation of public franchises as real property." The object of the Legislature was to extend taxation to public franchises, which theretofore escaped taxation. People ex rel. Met. St. Ry. v. Tax Com'rs, 174 N. Y. 417, 67 N. E. 69, 63 L. R. A. 884, 105 Am. St. Rep. 674. The word "franchises" was used in the ordinary signification of that word and has reference to a grant made by the Legislature itself or by some official body, board, or officer clothed with authority by delegation from the Legislature to represent the people in granting or completing the grant of a public franchise. See People ex rel. Retsof Mining Co. v. Priest, 75 App. Div. 131, 77 N. Y. Supp. 382, affirmed 175 N. Y. 511, 67 N. E. 1088; People ex rel. N. Y. C., etc., Co. v. Gourley, supra.

I am of opinion therefore that the right of way and the tunnel and railroad constructed therein pursuant to the patent from the state did not constitute a special franchise and are not taxable by the State Board of Tax Commissioners, but by the commissioners of taxes and assessments of the city of New York as ordinary real property held and used by a railroad company for the purposes of its incorporation, as before the enactment of the special franchise tax law. Section 2, subd. 3, and sections 3, 9, and 49, Tax Law, and Buffalo & State Line R. Co. v. Supervisors of Erie County, 48 N. Y. 93.

I therefore vote to reverse the order and to remit the proceeding to the Special Term for a further hearing.